No. 93-319

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE PATERNITY, CUSTODY AND
SUPPORT OF THE UNBORN CHILDREN OF:

CHERI ELLEN PEDERSEN,

Petitioner and Respondent,

and

JAYME DEANE NORDAHL,

Respondent and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Clinton H. Kammerer; Kammerer Law Offices,
                Missoula, Montana

        For Respondent:

                Terry G. Sehestedt, Attorney at Law, Missoula
                Montana

FILED

NOV - 2 1993

Filed

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  September 23, 1993

Decided:  November 2, 1993

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Cheri Ellen Pedersen (Cheri) filed a petition in the Fourth Judicial District Court, Missoula County, claiming that Jayme Deane Nordahl (Jayme) was the father of her yet unborn twin girls and requesting the court to determine paternity, custody, and child support. Jayme initially denied Cheri's claim but later admitted that he was the father of the children after blood tests showed a 99.99% probability of paternity. He asserts error in the District Court's calculation of child support and requests our review of its contempt ruling against him.

A hearing on Cheri's petition was held on March 4, 1993. During the course of the hearing, the District Court determined that a portion of Jayme's testimony was inconsistent with his response to a request for admission during discovery, held Jayme in contempt, and levied a $500 fine. The court issued findings of fact, conclusions of law, and judgment on April 13, 1993. It determined that Jayme was the father of the twins, awarded joint custody, and ordered Jayme to pay $1,248 per month in child support.

We affirm the District Court's calculation of child support and its contempt ruling.

Did the District Court err in calculating child support?

The District Court determined Jayme's total gross income by

2

adding the average of his 1991 and 1992 income, the average depreciation expenses that Jayme had deducted in those years, and the annual income attributable to his non-performing assets. After subtracting the average of his 1991 and 1992 federal and state income tax and social security deductions, the court calculated Jayme's primary child support obligation. It then increased his child support obligation by adding his pro-rata share of the cost of child care and health insurance.

The District Court used the child support guidelines promulgated by the Department of Social and Rehabilitative Services pursuant to § 40-5-209(5), MCA, in conjunction with the factors set forth in § 40-4-204, MCA, to determine child support. Under such circumstances, a presumption exists in favor of a district court's calculation of child support; we will not reverse it absent an abuse of discretion. In re Marriage of Sacry (1992), 253 Mont. 378, 382, 833 P.2d 1035, 1038.

Jayme challenges the District Court's treatment of total gross income, allowable deductions, and child care costs in its calculation of child support. He first contends that the District Court erred by averaging his 1991 and 1992 income and deductions, arguing that §§ 46.30.1508 and 46.30.1516, ARM, do not expressly authorize averaging.

This contention is inconsistent with Jayme's posture at the hearing. There, he did not object when Cheri introduced copies of his 1991 and 1992 income tax returns into evidence. Jayme also introduced exhibits which contained an averaging of his total and

adjusted gross incomes earned over a period of years. We will not put a district court in error for a ruling or procedure in which the appellant acquiesced, participated, or to which the appellant made no objection. In re Marriage of Smith (1990), 242 Mont. 495, 501, 791 P.2d 1373, 1377. Furthermore, § 46.30.1515(3), ARM, expressly allows fluctuating income to be annualized by averaging it over a period sufficient to accurately reflect earning ability.

Jayme also asserts that the deduction of depreciation expenses is economically necessary in his logging operation. On that basis, he contends that § 46.30.1508(1)(c), ARM, requires the District Court to deduct the depreciation expenses from gross income.

Non-cash deductions such as depreciation expenses are not generally subtracted from gross receipts in determining gross income. Section 46.30.1508(1)(c), ARM. Although § 46.30.1508 (1)(c), ARM, allows depreciation for vehicles, machinery and other tangible assets to be deducted upon a showing of economic necessity, the rule does not require a district court to do so. Jayme establishes no abuse of discretion in the District Court's treatment of the depreciation expenses.

Jayme also contends that the District Court ignored his testimony regarding the fluctuating balances in his logging business and personal bank accounts by using their current balances to calculate "income attributed to assets." The totality of Jayme's testimony relating to the logging business and personal accounts consisted of statements divulging their then-present balances ($4,000 and $5,000, respectively) and the balance in his

4

logging business account in December of 1992 ($17,805). This testimony provides a proper basis for the use of the accounts' then-current balances to calculate income attributed to assets.

Jayme also argues that the funds in his logging account, personal bank account, Trans America account, individual retirement account and KEOUGH account were derived solely from his 1992 income and, therefore, that the inclusion of these accounts in the "income attributed to assets" calculation resulted in a double counting of income. We disagree. Income attributed to assets is the amount of interest which would be earned if the non-performing assets were liquidated and the proceeds invested. Section 46.30.1514(1), ARM. The District Court determined the amount of interest pursuant to § 46.30.1514(2), ARM, and added that amount to Jayme's gross income. Thus, no double counting of his 1992 income occurred.

Finally, Jayme argues that the court's valuation of child care costs was speculative and that he is funding Cheri's education by paying his pro-rata share of the child care costs. These arguments are without merit.

The District Court properly valued the child care costs pursuant to § 46.30.1525(1)(a)(i), ARM. That rule provides that child care costs may be based on estimates of the average monthly costs of such service where receipted expenses are not available. Here, receipted expenses were not available because the twins had not previously been enrolled in full-time child care. Cheri testified, however, that she had surveyed child care centers and that the cost of day-care for two children the twins' age would

5

range from approximately $640 to $756 per month. This evidence supports the District Court's valuation of child care costs at $676 per month.

Finally, nothing in the findings of fact, conclusions of law and judgment supports Jayme's argument that he was ordered to pay child care costs to enable Cheri to return to school. The court found that Cheri was reasonably capable of earning $10,400 per year if she returned to full-time work as a cosmetologist and pro-rated the cost of necessary child care between Jayme and Cheri on that basis.

We hold that the District Court did not abuse its discretion in calculating child support.

Did the District Court properly hold Jayme in contempt?

Contempt orders are final and, as a general rule, unreviewable by this Court except by writ of certiorari. Section 3-1-523, MCA. We have created an exception in family law cases, however, and we will review a contempt order on appeal in such a case. Our review is limited to examining the record to determine whether the district court acted within its jurisdiction and whether evidence supports the finding of the court with respect to the purported contempt. In re Marriage of Prescott (Mont. 1993), 856 P.2d 229, 231, 50 St.Rep. 801, 802. We agree with Jayme that the basis for the exception developed for family law cases is equally applicable to cases involving paternity, child custody and child support and, therefore, review the District Court's contempt ruling against him.

6

At the March 4, 1993 hearing, the District Court found that Jayme's testimony was inconsistent with his response to a request for admission during discovery. On that basis, the court held Jayme in contempt "for a false answer."

Evidence supports the District Court's finding of an inconsistency in Jayme's statements and the corresponding falsity of one of those statements. Cheri's counsel asked Jayme whether he knew of any other person who had sexual intercourse with Cheri during the period of the twins' conception. This question mirrored Cheri's earlier Request for Admission No. 5. Jayme testified, consistent with his response during discovery, that he did not know of any other person who had sexual intercourse with Cheri during that time.

The District Court subsequently asked Jayme to state one fact that would lead him to believe he was not the father of the twins. Jayme testified that a specific friend, whom he named, had sexual intercourse with Cheri during the period of conception. This answer directly contradicts both his earlier testimony and his discovery response. Because Jayme's statements cannot be reconciled, the District Court properly found that one of them was false.

Deceit committed by a party constitutes contempt of the court's authority. Section 3-1-501(d), MCA. Thus, Jayme's falsehood provides a sufficient legal basis for the District Court to hold him in contempt. We conclude that no error occurred in the District Court's contempt ruling.

Affirmed.

_____
                    Justice

We concur:

_____
          Chief Justice

_____

_____

_____
          Justices

8