No. 99-131

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 338N

MATT MARTINCICH, WENDY MARTINCICH,

ELAINE WOLSTEIN and GREG WOLSTEIN,

Plaintiffs and Respondents,

v.

JAMES BECKER,

Defendant and Appellant.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Richard Orizotti; Poore, Roth & Robinson, Butte, Montana

For Respondents:

Mark Vucurovich; Henningsen, Vucurovich & Richardson, Butte, Montana

Mollie A. Maffei; Maffei Law Firm, Butte, Montana

Submitted on Briefs: September 30, 1999

Decided: December 29, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶ Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to

West Group in the quarterly table of noncitable cases issued by this Court.

¶ Appellant James Becker (Becker) appeals from the judgment and order of the Second Judicial District Court, Silver Bow County.

¶ We affirm in part and reverse in part.

¶ The following issues are presented on appeal:

¶ 1. Whether Becker's appeal is timely.

¶ 2. Whether the District Court's failure to make findings of fact and conclusions of law in its October, 1998 order was reversible error.

¶ 3. Whether the District Court erred in ordering that the middle gate be removed and that the width of the road be at least fifteen feet.

¶ 4. Whether the District Court erred in ordering that Becker install fencing on his property.

Standard of Review

¶ We review a district court's conclusions of law *de novo* to determine whether they are correct. Steer, Inc. v. Dept. Of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. We review a district court's findings of fact to determine whether they are clearly erroneous. Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

Factual and Procedural Background

¶ The Plaintiffs (hereafter, the Martinciches) own real property that is adjacent to or contiguous with real property owned by Becker. Becker has livestock, including horses. The Martinciches reside year-round on their property and have an easement over a road that traverses Becker's land (hereafter, the road) that they use to access their land. The Wolsteins also use the road to reach their property. The easement was granted by various deeds that date back to 1939. The road is located in a canyon flanked by a mountain on one side and pasture land on the other side. The width of the road is generally between fifteen and twenty-five feet.

¶ In 1992, the Martinciches filed a complaint alleging that Becker had interfered with their use of the road. The parties entered a judgment by stipulation in 1995. The District Court's 1995 judgment (hereafter, the 1995 judgment), which it entered pursuant to the parties' stipulation, noted the presence of three gates on the road and ordered that Becker remove the middle gate and replace it with a Powder River Gate or comparable gate. The District Court ordered that the upper gate be relocated to a level area on the Martinciches' land. The District Court further ordered that the upper gate would ordinarily be open from November 1 through April 15 and closed the balance of the year. The District Court ordered that Becker could build his own gate in the event that the Martinciches left the upper gate open at inappropriate times and created problems for Becker with his livestock. The District Court ordered that Becker limit the number of gates on the road to three.

¶ In January, 1997 the Martinciches moved the District Court for an order of contempt, alleging that Becker had "taken affirmative steps to deprive the Plaintiffs of their legitimate easement." The District Court held a hearing in July, 1997. In November, 1997 the District Court issued its findings of fact, conclusions of law, and decree (hereafter, the Contempt order). The District Court concluded that Becker "has taken affirmative action to destroy the easement and limit the Plaintiffs['] access to their property." The District Court found that Becker's actions included diverting irrigation waters to damage the integrity of the road, feeding his horses adjacent to the road, thereby creating a hazard to the horses and users of the road, digging ditches across the road, placing boulders and rocks "at strategic places on the road," and logging adjacent to the road, thereby subjecting it to erosion. The District Court also found that Becker had refused "to allow the road to be properly maintained" and that he "and/or his family members have harassed and threatened the Plaintiffs." The District Court concluded that Becker was in contempt of Court.

¶ The District Court ordered that Becker remove the middle gate and that the parties place monies in a trust account with the Clerk of Court for the maintenance of the road. Further, the District Court permanently enjoined Becker and his family from harassing or threatening the Martinciches and from taking actions that affect the integrity of the road.

¶ Becker petitioned this Court for a writ to review the District Court's Contempt order and to set it aside. The Court affirmed the District Court's judgment that Becker was in contempt of Court, denied Becker's request to set aside the Contempt order, and rejected Becker's argument that the Contempt order modified the 1995 order and thereby violated

principles of res judicata. Noting that the 1995 order allowed him to have three gates on the road, the Court concluded that the Contempt order's requirement that Becker remove the middle gate or replace it with a cattle guard "does not violate the spirit or substance of the prior judgment and does not violate principles of res judicata."

¶ In January, 1998 the Martinciches moved the District Court for an order of contempt. In June, 1998 the Martinciches moved the District Court for an order of contempt. In July, 1998 the District Court held a hearing on the Martinciches' contempt motion. Becker proposed a settlement and the District Court ordered that Becker reduce it to writing and serve it on the Martinciches' counsel and the District Court. The District Court further ordered that its Contempt order remained in effect. In October, 1998 the Martinciches filed a motion to enforce court order and a notice of violation of restraining order.

¶ In October, 1998 the District Court issued an order amending its Contempt order "[i]n an attempt to resolve the issues between the parties . . . . " The District Court ordered that Becker fence a portion of the east side of the road and that he remove the middle gate upon completion of the fence. In addition, the District Court ordered that Becker move a large rock several feet back from the road at a turnaround, that the Martinciches be responsible for "plowing the grading the road [sic]," and that the road be at least fifteen feet wide "except where physically impossible." Further, the District Court ordered that its Contempt order remained in effect. The District Court later issued a short addendum to its October, 1998 order, directing in part that the parties had thirty days to complete their obligations.

¶ In November, 1998 Becker filed a motion to amend the District Court's order. In January, 1999 Becker filed a notice of appeal and, in February, 1999 Becker filed an amended notice of appeal "from the denial of Defendant's Motion to Alter or Amend Judgment, which was filed on November 2, 1998, and deemed denied pursuant to Rule 59 (d), Mont. R.Civ.P., sixty (60) days thereafter on January 1, 1999." Becker filed a second amended notice of appeal in April, 1999.

## Discussion

¶ 1. Whether Becker's appeal is timely.

¶ The Martinciches argue that Becker's appeal is not timely. They contend that because Becker failed to file a brief with his motion to amend the District Court's October, 1998

order, he "essentially" admitted that his motion to amend was without merit. Uniform District Court Rule 2(b), provides in pertinent part that "Failure to file Briefs may subject the motion to summary ruling. Failure to file a Brief within five (5) days by the moving party shall be deemed an admission that the Motion is without merit." The Martinciches argue that Becker should have filed his notice of appeal within thirty days of the date of his failure to file a brief, or by December 15, 1998. The Martinciches argue further that they did not need to file a notice of entry of judgment for the District Court's October, 1998 order because the order was "not what Martincich et al. sought." The Martinciches argue that because they were not "prevailing parties" under Rule 77(d), M.R.Civ.P., they were not required to serve a notice of entry of judgment.

¶ Becker responds that in essence he did file a brief with his motion to amend. Becker argues further that his appeal is timely under Rule 59(g), M.R.Civ.P., and Rule 5, M.R. App.P.

¶ The Martinciches' claim that Becker's motion to amend was in essence void because Becker did not file a brief is without merit. The record shows that Becker's *pro se* motion to amend was accompanied by five paragraphs of discussion regarding the points in the District Court's order that he wanted the District Court to amend and his reasons why the order should be amended. Thus, in arguing that Becker did not file a brief with his motion, the Martinciches have exalted form over substance. *Compare* Moody v. Northland Royalty Co. (1997), 286 Mont. 89, 95, 951 P.2d 18, 22 (concluding that "[f]or purposes of characterizing post-judgment motions, this Court has generally held that the substance, not the caption, of the document controls"). In the present case, we conclude that Becker filed a brief with his *pro se* motion to amend.

¶ We turn to the issue whether Becker's notice of appeal was timely filed and address the pertinent rules of civil and appellate procedure. Rule 59(g), M.R.Civ.P., provides:

> **Motion to alter or amend a judgment**. A motion to alter or amend the judgment shall be served not later than 10 days after the service of the notice of entry of the judgment, and may be combined with the motion for a new trial herein provided for. This motion shall be determined within the time provided hereinabove with respect to a motion for a new trial and if the court shall fail to rule on the motion within the 60 day period, the motion shall be deemed denied.

¶ Rule 59(d), M.R.Civ.P., provides in pertinent part:

> **Time for ruling on motion**. If the court shall fail to rule on a motion for new trial within 60 days from the time the motion is filed, the motion shall, at the expiration of said period, be deemed denied.

¶ Finally, Rule 5, M.R.App.P., provides in pertinent part that

> If a timely motion under the Montana Rules of Civil Procedure is filed in the district court by any party: . . . (iii) under Rule 59 to alter or amend the judgment [then,] . . . the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion, *or if applicable, from the time such motion is deemed denied at the expiration of the 60-day period established by Rule 59(d), Montana Rules of Civil Procedure.* No notice of entry of judgment is required to be filed when any of the foregoing motions referred to herein is deemed denied.

Rule 5(a)(4), M.R.App.P. (emphasis added).

¶ Applying these rules in the present case, we conclude that the record shows that Becker's appeal was not untimely. Becker filed his motion to amend on November 2, 1998; the Martinciches do not dispute that this motion was timely filed. The District Court did not rule on Becker's motion to amend. Under Rules 59(d) and (g), M.R.Civ.P., Becker's motion to amend was therefore deemed denied sixty days after he filed the motion, on January 1, 1999. Becker then filed a notice of appeal on January 27, 1999, within the thirty days for appeal provided under Rule 5, M.R.App.P. We hold that Becker's notice of appeal was timely filed. Because this holding is dispositive, we do not address the other arguments raised by the parties regarding the timeliness of Becker's appeal.

¶ 2. Whether the District Court's failure to make findings of fact and conclusions of law in its October, 1998 order was reversible error.

¶ Becker argues that the District Court was required to make findings of fact and conclusions of law in its October, 1998 order under Rule 52(a), M.R.Civ.P., and that its failure to make such findings and conclusions is reversible error. The Martinciches respond that the District Court was not required to make findings of fact in the October, 1998 order. We agree.

¶ As Becker notes, Rule 52(a), M.R.Civ.P., provides that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon." However, Becker has overlooked Rule 52 (a), M.R.Civ.P.'s further provision that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under rule 12 or 56 *or any other motion* except as provided in subdivision (c) of this rule." Rule 52(a), M.R.Civ.P. Subdivision (c) of Rule 52 concerns judgments on partial findings, which are not at issue in the present case.

¶ The District Court's October, 1998 order was issued in response to the Martinciches' motion to enforce court order. We conclude that under Rule 52(a), M.R.Civ.P., the District Court was not required to make findings of fact and conclusions of law in its October, 1998 order.

¶ 3. Whether the District Court erred in ordering that the middle gate be removed and that the width of the road be at least fifteen feet.

¶ Becker argues that the District Court erred in ordering that the middle gate be removed. He argues that no evidence supports the District Court's conclusion that the gate would unreasonably interfere with the Martinciches' use of their easement and that he has a right to the middle gate. Becker also argues that the District Court erred in ordering that the width of the road be at least fifteen feet except where physically impossible.

¶ The Martinciches respond that these issues were previously determined in the District Court's Contempt order. The Martinciches argue that because this Court has affirmed the Contempt order and its findings, the District Court's orders regarding the width of the roadway and the removal of the middle gate are the law of the case.

¶ Contempt orders are final and "as a general rule, unreviewable by this Court except by writ of certiorari." In re Pedersen (1993), 261 Mont. 284, 289, 862 P.2d 411, 414. There is an exception to this rule for family law cases. *See Pedersen*, 261 Mont. at 289, 862 P.2d at 414. However, that exception is inapplicable in the present case. Section 3-1-523, MCA, provides in pertinent part:

> **Judgment and orders in contempt cases final**. The judgment and orders of the court or judge made in cases of contempt are final and conclusive. There is no appeal, but the action of a district court or judge can be reviewed on a writ of certiorari by the supreme court or a judge thereof . . . .

Thus, as a matter of law Becker could not appeal the Contempt order but rather could seek this Court's review of it on a writ of certiorari.

¶ We turn therefore to Becker's application for writ of certiorari (hereafter, Becker's application), which he filed in December, 1997. In Becker's application, which sought review of the Contempt order, Becker argued that the District Court "revised and modified the underlying judgment upon which the Contempt motion had been based. Such modification of a Judgment which had been entered in January 1995 was in excess of Respondent's jurisdiction and authority." Becker argued further that the Contempt order violated the doctrine of res judicata.

¶ In denying Becker's application for writ of certiorari, we concluded:

> Becker does not specify how the 1997 judgment of contempt purportedly modified the 1995 judgment nor does he elaborate as to how the unspecified modifications prejudiced him. The most that can be gleaned from Becker's petition is that, while the 1995 judgment allowed Becker to maintain three gates, the 1997 judgment orders that the middle gate be removed. . . . We determine that the 1997 order requiring that Becker either remove the gate, or replace it with a cattle guard, does not violate the spirit or substance of the prior judgment and does not violate principles of res judicata. Becker's request that we set aside the 1997 judgment is denied.

Thus, the only modification that Becker appeared to contest in his application concerned the removal of the middle gate. Again, however, we determined that his application was without merit.

¶ Becker's claim that the October, 1998 order "reasserted" the removal of the middle gate "without any findings or conclusions" is mistaken and disingenuous. Rather, the October, 1998 order affirmed the Contempt order's conclusion that Becker must remove the middle gate. Moreover, the Contempt order had findings and conclusions about the middle gate that Becker failed to specifically raise in his application. Becker cannot circumvent § 3-1-523, MCA's bar against appeals of contempt orders by raising issues on appeal that the District Court determined in its Contempt order. We note, however, that under the Contempt order Becker is free to replace the middle gate with a cattle guard to contain his livestock.

¶ Becker's claim that the October, 1998 order had the effect of widening the road is similarly misguided and barred by § 3-1-523, MCA. The October, 1998 order required that "the roadway shall be at least fifteen feet wide except where physically impossible." Becker argues that the District Court has thereby ordered a "widening" of the historic roadway. However, Becker has ignored the Contempt order's finding that "[t]he easement has never been 30-feet wide, as its width is limited by the existing terrain, but it is generally 15-25 feet wide and 2 vehicles can generally pass each other." In light of this record, we conclude the October, 1998 order did not effect a widening of the roadway but merely directed that the road be at least the minimum width that the District Court had determined in its Contempt order. Becker did not challenge that finding of the Contempt order in his application and he is barred under § 3-1-523, MCA, from raising it on appeal.

¶ We conclude that Becker's arguments are without merit.

¶ 4. Whether the District Court erred in ordering that Becker install fencing on his property.

¶ Becker argues that the District Court erred in its October, 1998 order in requiring that he install fencing on the east side of the road. Becker argues that the fencing requirement is unreasonable and "places a burden upon [his land] far in excess of that contemplated at the time of the grant of the right-of-way."

¶ The Martinciches respond that the October, 1998 order followed an inspection of Becker's land with the District Court and that "[a]t no time during that inspection, nor at any time after the inspection, did Becker contend that the Judge's actions were improper." The Martinciches conclude that by participating in discussions with the District Court, Becker waived any objection. We note, however, that the Martinciches also state that "[c]andidly, Martincich does not care if Becker fences his property."

¶ We conclude that the District Court erred in requiring that Becker install a fence. The Martinciches have failed to point to anything in the record that would suggest that the issue of new fencing on the east side of the road was raised in the parties' pleadings. The District Court clearly exceeded its jurisdiction in ordering, *sua sponte*, that Becker install a fence on the east side of the road. *Compare* National Surety Corp. v. Kruse (1948), 121 Mont. 202, 205-06, 192 P.2d 317, 319 (concluding "[t]he rule in Montana as well as in other jurisdictions, seems to be well settled that a judgment must be based on a verdict or findings of the court and must be within the issues presented to the court").

¶ We therefore vacate the portion of the October, 1998 order requiring that Becker install fencing on the east side of the road.

¶ Finally, we note that the Martinciches have moved for the imposition of sanctions under Rule 32, M.R.App.P. The Martinciches' motion is denied.

¶ The October, 1998 order of the District Court is affirmed in part and vacated in part.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER