J-A07008-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.L.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| S.R.W. | |
| Appellant | No. 1520 MDA 2013 |

Appeal from the Order July 23, 2013
In the Court of Common Pleas of Adams County
Civil Division at No(s): 04-DR-158

BEFORE:  GANTMAN, P.J. , DONOHUE, J., and STABILE, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED AUGUST 05, 2014**

Appellant, S.R.W., ("Father") appeals from the order of child support entered in the Adams County Court of Common Pleas.  We affirm in part, and vacate and remand in part.

The trial court opinion sets forth the relevant facts and procedural history of this case as follows:

> Father is a small business owner, operating the business known as Herr Ridge, Inc. for thirty-five years.  The business consists of a restaurant and a school bus company.  Mother[, Appellee,] works at Sportsman Liquidation and has been employed there for four and one-half years.  Father's business' 2011 U.S. Corporation Income Tax Return lists gross receipts of $1,631,446, gross profit of $1,144,453, and total income of $1,153,320.  After deductions, Father's business' 2011 U.S. Corporation Income Tax Return states a negative taxable income value.  For 2011, Father paid himself a salary from his business of $23,538.54, including $17,313.76 compensation and $6,224.78 for insurance.

For tax year 2012, Father paid himself $12,000 compensation and $6,479.76 for insurance. Mother's gross monthly income is $2,346.43 with a net monthly income of $1,879.78.

On March 24, 2004, Mother filed a Complaint for Support, seeking support for herself and the parties' minor child, S.L.W., born [September 1998]. A support conference was scheduled for April 14, 2004. By Order of Court dated April 6, 2004, this [c]ourt dismissed Mother's Complaint for Support without prejudice because Mother withdrew the action and indicated in an Affidavit of Dismissal that the parties were reconciling.

On July 6, 2004, Mother again filed a Complaint for Support, requesting that the prior support complaint be reinstated in order to obtain child support for the parties' child. A support conference was scheduled for July 19, 2004. By Order of Court dated July 15, 2004, the support conference was continued for ninety days pending settlement of the parties. The Order of Court indicated that if the parties reached a settlement outside of Domestic Relations or if Mother did not make a request to proceed with such action during this time, the Complaint would be dismissed and case closed after ninety days. By Order of Court dated November 24, 2004, this [c]ourt dismissed Mother's Complaint for Support without prejudice because Mother did not request that Domestic Relations address the Complaint.

On February 23, 2005, Mother filed a Complaint for Support. A support conference was scheduled for March 15, 2005. An Interim Support Order was entered on March 9, 2005, where Father's support obligation was set at $570.00 per month for child support.

By Order of Court dated August 4, 2005, and with Mother's consent, Attorney Henry O. Heiser, III, Esquire was granted permission to withdraw as counsel for Mother.

By Order of Court dated September 30, 2005, a support modification conference was scheduled for October 24, 2005. Both parties appeared at the support modification conference and both parties submitted materials analyzing

Father's corporate income. The conference officer determined that Mother's analysis of Father's corporate income was a more accurate reflection of Father's income, and held Father to $24,000 gross per year as taxable income and $108,223 per year as non-taxable income which included add-backs for rental income and two depreciation deductions. By Order of Court dated November 23, 2005, a Modified Support Order was entered, setting Father's support obligation at $1,265.00 per month, consisting of $1,165.00 in child support and $100 in arrears.

On December 8, 2005, Father filed a Demand for Hearing, alleging that the conference officer made several errors in calculation of the parties' individual incomes and in calculating the support order. By Order of Court dated December 8, 2005, a *de novo* hearing was scheduled for January 26, 2006. On December 9, 2005, Father filed a Petition for Stay, requesting this [c]ourt to enter a stay over the November 23, 2005 support order. A hearing on Father's Petition was scheduled for January 9, 2006. By Order of Court dated December 30, 2005, the January 26, 2006 *de novo* hearing was rescheduled for January 31, 2006. By Order of Court dated January 27, 2006, the *de novo* hearing was rescheduled for March 6, 2006. By Order of Court dated March 3, 2006, the *de novo* hearing was rescheduled for May 4, 2006. By Orders of Court dated May 1, 2006 and May 2, 2006, the *de novo* hearing was rescheduled for August 3, 2006.

By Praecipe filed May 25, 2006, Attorney Kollas withdrew his appearance for Father and Martha Baum Walker, Esquire, entered her appearance for Father.

The *de novo* hearing was held on August 3, 2006. By Order of Court dated August 16, 2006, this [c]ourt directed the Adams County Domestic Relations Office to prepare a PACSES generated child support order effective to February 22, 2005, utilizing this [c]ourt's determinations of the parties' income which resulted in Father's child support obligation being reduced from $1,165 per month to $960 per month, plus $50 per month for arrears. This [c]ourt determined that Father's net monthly income was $9,071.72, and noted in the August 16, 2006 Order that

- 3 -

Father's income was determined using year 2006 tax rates rather than year 2005 tax rates. The PACSES generated support order memorializing this [c]ourt's decision was filed on August 17, 2006.

On August 31, 2006, a Petition for Contempt was filed, alleging that Father had failed to comply with the support order. By Order of Court dated August 31, 2006, a contempt hearing was scheduled for September 21, 2006. On September 11, 2006, Mother filed a Petition for Modification of an Existing Support Order, requesting a review and increase in support due to Father acquiring a new bus route since the last order had been established. By Order of Court dated September 11, 2006, a support modification conference was scheduled for October 4, 2006. By Order of Court dated September 14, 2006, the conference was rescheduled to October 25, 2006. By Order of Court dated September 21, 2006, this [c]ourt scheduled a hearing on Mother's Petition for Modification for November 8, 2006. By separate Order of Court dated September 21, 2006, Father was ordered to appear for a hearing on contempt on November 8, 2006, to be held contemporaneously with the hearing on Mother's Petition.

On September 13, 2006, Father filed a Motion for Reconsideration and a Motion for Stay of Enforcement. By Order of Court dated September 21, 2006, hearings on Father's Motions were scheduled for November 8, 2006 to be held contemporaneously with the hearings previously scheduled.

By Order of Court dated November 8, 2006, Father's contempt hearing was scheduled for December 6, 2006. By separate Order of Court dated November 8, 2006, this [c]ourt continued the hearing on Mother's Petition for Modification to December 6, 2006. By Order of Court dated December 7, 2006, the Petition for Contempt against Father was dismissed because Father had purged the contempt.

On December 6, 2006, this [c]ourt held the *de novo* hearing. At the hearing, the parties reached an interim agreement for support, with Father being responsible for $667 per month for current child support and $200 per

- 4 -

month arrears, totaling $867 per month. This agreement was memorialized in an Order of Court dated December 7, 2006.

On April 16, 2007, this [c]ourt received Father's Petition for Modification of an Existing Support Order, requesting a decrease in support due to alleged reduction in income. This Petition was eventually filed with the Prothonotary's Office on January 15, 2008. On January 14, 2008, an Order of Court was entered scheduling a conference on Father's Petition for February 11, 2008. On January 16, 2008, Attorney Walker filed her Praecipe for Withdrawal of Appearance. By Order of Court dated February 7, 2008, the February 11, 2008 conference was continued for ninety days pending a possible settlement. The Order indicated that if no settlement was reached during that time, the conference would be rescheduled.

By Order of Court dated June 30, 2008, the parties having reached an agreement in regards to child support which included the dismissal of the Order for Support with all credits and arrears waived by the parties, this [c]ourt dismissed the action without prejudice and with no arrears or credits.

For the period of time from June 30, 2008 until November 21, 2012, the parties operated under their private agreement regarding child support with no involvement from Domestic Relations or this [c]ourt.

On November 21, 2012, Mother filed a new Complaint for Support, effectively reopening the parties' child support case. By Order of Court dated November 21, 2012, a conference was scheduled for December 20, 2012. By Order of Court dated December 10, 2012, the conference was rescheduled to January 10, 2013. On January 10, 2013, the support conference was held.

By Order of Court dated January 31, 2013, a support order was entered requiring Father to pay $668 per month in child support and $67 per month in arrears, totaling $735 per month. The conference officer determined that Mother's gross earnings were $540 per week, and that Father provided health insurance for the child. The

- 5 -

conference officer averaged the results of two separate income calculations to determine Father's income. The conference officer's first income calculation for Father was based on Father's income as Father stated in his bankruptcy filings, the United States Bankruptcy Court—Official Form 6-Summary of Schedules (hereinafter "Summary of Schedules") and Schedule I—Current Income of Individual Debtor (hereinafter "Schedule I"). Father stated his income in both the Summary of Schedules and Schedule I as $10,047.16 per month. The conference officer then calculated Father's income based on $23,538 listed wages, $24,000 rent add-back and $37,544 depreciation expense for tax year 2011, totaling $85,082 in income. The conference officer determined the guideline support amounts for both income calculations, $701 and $635 respectively, and averaged them to determine a recommended support amount of $668 per month. The conference officer noted in the Order that the recommended support amount was close to the $667 per month support amount as agreed to by the parties the last time the case has been open through Domestic Relations.

On February 11, 2013, Father filed a Demand for Hearing *De Novo*, alleging that Father's income was not calculated correctly, that Father was not credited for arrears remitted, and that Mother had more income than as determined by the conference officer. By Order of Court dated February 11, 2013, a *de novo* hearing was scheduled for March 6, 2013. By Order of Court dated March 7, 2013, the *de novo* hearing was rescheduled for April 3, 2013. By Orders of Court dated April 3, 2013 and April 4, 2013, the *de novo* hearing was continued to June 6, 2013.

On May 20, 2013, a Petition for Contempt was filed alleging that Father had failed to pay support as ordered. By Order of Court dated May 20, 2013, a hearing on the contempt was scheduled for June 26, 2013.

The *de novo* hearing was held on June 6, 2013. Both parties testified. After the hearing, this [c]ourt entered an Order of Court dated June 6, 2013, providing each party until Friday, June 21, 2013 to file a memorandum on any relevant matter regarding the case, directing Mother to

deliver to the Domestic Relations Office a copy of her 2012 federal income tax return as filed, including all schedules, no later than June 7, 2013, and stating that this [c]ourt would decide the appropriate amount of support to be paid and also decide the issue of which party is entitled to the dependency exemption for the child, effective with calendar year 2012. By Order of Court dated June 7, 2013, an additional hearing was scheduled for July 31, 2013.

On June 18, 2013, Father filed his Defendant's Supplemental Memorandum, alleging that Father's 2012 income was $25,159.00, or $2,096.00 per month, consisting of $12,000.00 in wages, $11,411.00 in real estate depreciation and $1,748.00 in real estate profit. Father alleged that his income for 2012 was less than his 2011 income, and stated that there should be no support order because Mother's gross income was $2,346.00 per month. Father also argued that he should be able to claim the child as a dependent each year because he pays $305.00 per month in health insurance for the child, all of the child's medical expenses, and provides more than half of her support.

On June 17, 2013, Domestic Relations received a Motion for Continuance from Father, asking this [c]ourt to continue the contempt hearing scheduled for June 26, 2013. By Order of Court dated June 20, 2013, the contempt hearing was continued to July 31, 2013.

On July 23, 2013, this [c]ourt entered its Order of Court regarding child support. This [c]ourt determined that Father's 2011 income was $85,083, consisting of $23,539 listed wages, $24,000 rent add-back, and $37,544 depreciation, based upon information provided in Father's 2011 personal and corporate federal income tax returns, and Father's W-2. This [c]ourt determined that Father's monthly support obligation effective November 19, 2012, the date that Mother filed her Complaint for Support, through March 31, 2013, is $635 per month plus $100 per month arrears. This [c]ourt noted that if it used Father's income information as provided in Father's 2012 personal and corporate federal income tax returns, Father's monthly support obligation would increase on April 1, 2013 from

- 7 -

$635 per month to $768 per month based on an income of $103,605, consisting of $18,480 listed wages, $24,332 rent add-back, and $60,793 depreciation. This [c]ourt exercised its discretion to deviate from the recommended support amount, and determined that Father's monthly support obligation effective April 1, 2013 would remain at $635 plus $100 arrears per month, for a monthly total of $735 per month in support. This [c]ourt also determined that effective for the 2012 calendar year, Mother is entitled to the dependency exemption for the child in even-numbered tax years, and Father is entitled to the dependency exemption for the child in odd-numbered tax years. By Order of Court dated July 30, 2013, the PACSES generated child support order was entered.

After hearing, and by Order of Court dated July 31, 2013, Father acknowledged contempt and sentencing was deferred to September 25, 2013. By Orders of Court dated August 5, 2013 and August 7, 2013, Father's sentencing hearing was continued to October 2, 2013.

On August 22, 2013, Father timely filed his Notice of Appeal, appealing this [c]ourt's July 23, 2013 Order of Court. By Order of Court dated August 22, 2013, this [c]ourt directed Father to file and serve on this Judge a concise statement of [errors] complained of on appeal. On September 9, 2013, Father timely filed his Statement of [Errors] Complained of on Appeal.

(Trial Court Opinion, filed on October 11, 2013, at 1-9) (internal footnotes and citations to the record omitted).

Father raises the following issues for our review:

DID THE TRIAL COURT MAKE AN ERROR OF LAW/ABUSE OF DISCRETION IN CONSIDERING AS INCOME FOR [FATHER] THE DEPRECIATION OF ASSETS HELD BY HERR RIDGE, INC., WHICH CONSIST OF EQUIPMENT, MACHINES, AND SUPPLIES USED BY THE BUSINESS, WHERE (A) THERE WAS NO EVIDENCE THOSE CASH FLOWS COULD HAVE INSTEAD BEEN DISPERSED TO FATHER, (B) FATHER SHOWED THE EXPENDITURES WERE NECESSARY FOR THE CONTINUED OPERATION OF THE

BUSINESS, AND (C) THE VALUE OF THE ASSETS AFTER THE DESIGNATED DEPRECIATION PERIOD WILL BE *DE MINIMUS*?

DID THE TRIAL COURT MAKE AN ERROR OF LAW/ABUSE OF DISCRETION IN FAILING TO ASSIGN THE DEPENDENCY EXEMPTION TO FATHER EVERY YEAR WHERE FATHER PAYS THE MAJORITY OF THE CHILD'S EXPENSES INCLUDING MEDICAL INSURANCE?

(Father's Brief at 5).

The well-settled standard of review in a child support case provides:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Silver v. Pinskey*, 981 A.2d 284, 291 (Pa.Super. 2009) (*en banc*) (quoting

*Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007)).

In his first issue, Father argues an analysis under *Labar v. Labar*, 557

Pa. 54, 731 A.2d 1252 (1999) is required to ascertain the true nature and

extent of Father's interest in Herr Ridge, Inc. Father claims the court failed

to examine whether Father had sheltered cash flow that should be attributed

to his income. Rather, Father alleges the court improperly included the

depreciation listed in Herr Ridge, Inc.'s federal tax returns in the calculation

of Father's income after the court concluded Herr Ridge Inc.'s depreciating assets have significant value at the end of their life. Father contends he provided the court with specific documentation to show the nature of the equipment depreciated, but the court ignored his testimony regarding the shifting uses of Herr Ridge Inc.'s buses over ten years. Father asserts it is difficult to construe that the buses retain significant value after their depreciation period of five years because, after seven years, the buses have little value to Herr Ridge, Inc. and eventually will be worth only scrap value. Father maintains including the depreciation for buses as income available to Father was error because the court cannot attribute as income funds which are not actually available to or received by Father, and there has been no evidence or analysis of whether the depreciation at issue represented sheltered assets.

Father also argues the court incorrectly compared the parties' 2006 support agreement of $667 per month to Father's current support obligation of $635 per month. Specifically, Father asserts Mother had primary custody in 2006, whereas now Mother and Father share custody, and Father's total income in 2005 was $141,403.00 as compared to his total income of only $85,083.00 in 2011. Father concludes the depreciation should be not included in the calculation of Father's income. Based on the following, we are constrained to vacate and remand for further proceedings.

As a general rule, "the amount of support to be awarded is based upon

the parties' monthly net income." Pa.R.C.P. 1910.16-2. Pennsylvania Rule of Civil Procedure 1910.16-2 provides:

**Rule 1910.16-2. Support Guidelines. Calculation of Net Income**

* * *

**(a) Monthly Gross Income.** Monthly gross income is ordinarily based upon at least a six-month average of all of a party's income. The term "income" is defined by the support law, 23 Pa.C.S.A. § 4302, and includes income from any source. The statute lists many types of income including, but not limited to:

(1) wages, salaries, bonuses, fees and commissions;

(2) net income from business or dealings in property;

(3) interest, rents, royalties, and dividends;

(4) pensions and all forms of retirement;

(5) income from an interest in an estate or trust;

(6) Social Security disability benefits, Social Security retirement benefits, temporary and permanent disability benefits, workers' compensation and unemployment compensation;

(7) alimony if, in the discretion of the trier of fact, inclusion of part or all of it is appropriate; and

* * *

(8) other entitlements to money or lump sum awards, without regard to source, including lottery winnings, income tax refunds, insurance compensation or settlements; awards and verdicts; and any form of payment due to and collectible by an individual regardless of source.

* * *

**(c)  Monthly Net Income.**

(1)  Unless otherwise provided in these rules, the court shall deduct only the following items from monthly gross income to arrive at net income:

  (A)  federal, state, and local income taxes;

  (B)  unemployment compensation taxes and Local Services Taxes (LST);

  (C)  F.I.C.A. payments (Social Security, Medicare and Self-Employment taxes) and non-voluntary retirement payments;

  (D)  mandatory union dues; and

  (E)  alimony paid to the other party.

(2)  In computing a spousal support or alimony *pendente lite* obligation, the court shall deduct from the obligor's monthly net income all of his or her child support obligations and any amounts of spousal support, alimony *pendente lite* or alimony being paid to former spouses.

Pa.R.C.P. 1910.16-2(a), (c).  Income is defined as:

compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards

or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302.

When determining a parent's financial obligation to his children, a trial court must make a detailed appraisal of the parent's actual earnings, perquisites, and the true nature and extent of his property and financial resources. *Labar, supra* at 59, 731 A.2d at 1254 (citing *Commonwealth ex rel. Gitman v. Gitman*, 428 Pa. 387, 237 A.2d 181 (1967)).

> [I]n computing income available for support when the payor owns his own business, income must reflect actual available financial resources and not the often times fictional financial picture which develops as the result of depreciation deductions taken against…income as permitted by the federal income tax laws. Otherwise put, **"cash flow" ought to be considered and not federally taxed income**.

*Heisey v. Heisey*, 633 A.2d 211, 212 (Pa.Super. 1993) (quoting *McAuliffe v. McAuliffe*, 613 A.2d 20, 22 (Pa.Super. 1992)) (emphasis in original). "Furthermore, personal perquisites, such as entertainment and personal automobile expenses, paid by a party's business must be included in income for purposes of calculating child support." *Id.* (citing *Coffey v. Coffey*, 575 A.2d 587 (Pa.Super. 1990)).

"[D]epreciation and depletion expenses, permitted under federal income tax law without proof of actual loss, will not automatically be deducted from gross income for purposes of determining awards of alimony and equitable distribution." *Cunningham v. Cunningham*, 548 A.2d 611,

612 (Pa.Super. 1988) (quoting *Commonwealth ex rel. Hagerty v. Eyster*, 429 A.2d 665, 668-69 (1981)). "Depreciation and depletion expenses should be deducted from gross income only where they reflect an actual reduction in the personal income of the party claiming the deductions…." *Id.* at 613. Thus, a calculation of disposable income for purposes of support will include federal tax deductions, unless the obligor proves the tax deductions (depreciation) actually represent a real reduction in the obligor's gross personal income. *Labar, supra* at 60, 731 A.2d at 1255.

"[I]t is possible that a person could use a corporation to shelter income from the support obligation calculation by improperly retaining cash flows within the corporation rather than disbursing them to the shareholders[.]" *Id.* at 61, 731 A.2d at 1255. Nevertheless, "depreciation does not generate cash flow." *Id.*

> Depreciation is an accounting mechanism which allocates the original cost of an asset to the periods in which the asset is used. Depreciation does not result in income. Rather, when depreciation expense is claimed, **taxable** income is decreased by the amount so claimed, resulting in a "marginal income tax savings," not an increase in income.
>
> The presence of a depreciation deduction (on a federal income tax return) or a depreciation expense (on consolidated financial statements) simply signals that a corporation has made capital expenditures, the costs of which it seeks to allocate to the periods in which the assets underlying the capital expenditures are being used. Only by asserting that the capital expenditures, for which depreciation deductions are currently being claimed, were made with cash flows that should have instead been

disbursed to the shareholders, can it be argued that a corporation is improperly sheltering cash flows.

*Id.* at 61-62, 731 A.2d at 1255-56 (emphasis in original).

In situations where the support obligee contends that the support obligor's interest in a closely held corporation is not accurately represented by the support obligor's share of the corporation's taxable income, the court must make an appraisal of the true nature and extent of the support obligor's interest in the corporation. That appraisal can take the form of a valuation of the support obligor's equity in the corporation, or it can take the form of an allegation that the corporation has sheltered cash flows by not making disbursements to its shareholders. When it is alleged that the corporation has sheltered cash flows, the sources of those cash flows must be identified[,] *i.e.*, it must be shown that the cash flows **could have been** disbursed to shareholders. In cases where cash flows which could have been disbursed to shareholders have instead been disbursed for business expenses, the corporation must show that the expenditures were necessary for the continued operation and smooth running of the business in order to refute an allegation that the corporation has sheltered cash flows.

*Id.* at 63-64, 731 A.2d at 1257 (emphasis in original). "[I]n inquiring into whether the depreciation and depletion expenses reflected an **actual** reduction in Husband's personal income…[the court] must look at whether any such marginal income created through tax savings was reinvested in the business or distributed to the Husband directly." *Id.* at 64-65, 731 A.2d at 1257 (emphasis in original). "[The court] must also inquire as to whether the capital outlays underlying the reduction were necessary…or whether they represented an attempt to shelter income for purposes of avoiding…child support obligations…. Each must be examined **separately** and the trial

court must be clear as to which factor it is scrutinizing." ***Id.*** at 65, 731 A.2d at 1257-58 (emphasis in original).

Instantly, in its opinion, the trial court explained it did not make a ***Labar*** inquiry into the listed depreciation on Father's federal income tax return. (***See*** Trial Court Opinion at 15.) Nevertheless, the court recognized:

> Father's tax returns do not directly indicate the source of the depreciation, and Father did not provide the conference officer or this [c]ourt with any specific documentation indicating the nature of the equipment being depreciated. Father did provide to the conference officer a Form 4562 Depreciation and Amortization 2011, part of Father's 2011 U.S. Corporation Income Tax Return, which was also admitted as an exhibit at the *de novo* hearing. The Form 4562, in Line 6(a) Description of Property, lists "Buses 2." Most of Form 4562 is incomplete.
>
> The presence of a depreciation deduction on Father's business' tax return would seem to indicate that Father's business has made capital expenditures it wishes to allocate to that year. ***See Labar,*** [***supra*** at 66,] 731 A.2d at 1258. **It is not clear from the record if Father actually made these capital expenditures or whether the listed depreciation expense is sheltered cash flow.** Father alleges that the depreciation is for equipment and rolling stock, including the school buses Father owns as part of his business. Father testified that the depreciation listed on his tax returns came from "rolling stock property, school buses and vans." Father testified that the depreciable life of the school buses and vans would be five to seven years. Father testified that the typical lifespan of that equipment was five to seven years, and at most ten years. When asked by his counsel if school buses were similar to real estate regarding depreciation, Father testified that "real estate still has an intrinsic value at the end of depreciation," and that the school buses "become only worth the junk price of $0.12 a pound."

Generally, after equipment is fully depreciated, it has little or no value and a reduced basis, known as the scrap or salvage value. On the other hand, real estate retains its intrinsic value after depreciation, and often increases in value. Father's own testimony indicates that Father is still able to get use and value from his school buses after they have been fully depreciated. According to Father, a school bus on a five year depreciation schedule can be operated for up to ten years, giving Father a useful life of his equipment up to double the length of time it takes to depreciate the equipment. Assuming that the depreciation expense is not representative of sheltered cash flow, and that the equipment being depreciated by Father is all rolling stock, Father's ability to push the useful life of a school bus to up to ten years indicates that the school buses have intrinsic value at the end of their depreciable life. **It is this [c]ourt's determination that the depreciation, even if not representative of sheltered cash flow, may be included in Father's income for support purposes because the assets Father alleges to be depreciating have significant value at the end of their depreciated life.**

(Trial Court Opinion at 15-16) (internal citations to the record omitted) (emphasis added). Moreover, the court recognized the possible necessity for remand in this case, based on **Labar**. (**See id.** at 20.) On this record, we are unable to assess the propriety of the court's child support decision. Accordingly, we must vacate the court's order in part and remand for further proceedings to allow the court to scrutinize Father's finances under **Labar**, with a detailed analysis capable of review.

In his second issue, Father argues he should have been granted the child dependency tax exemption for every year, rather than every other year. Father contends he presented evidence in the form of federal tax returns completed with and without the dependency tax exemption, which

proved Father would receive an additional $3,782.00 in tax refund if he claimed the child yearly as a dependent. Father alleges Mother did not refute his claims or assert that her use of the dependency exemption would result in similar or higher benefits available for the child's or the parties' use. Father suggests Mother's use of the dependency exemption would unlikely result in a similar benefit because Mother grosses only about $28,000.00 annually. Father avers that, even if an analysis of the tax return benefits was not enough to sustain Father's position, Father's higher proportional share of the child's expenses beyond the court ordered support payments should make the evidence on this issue weigh more heavily in his favor. Specifically, Father maintains he pays for all of the child's dental and medical bills, the child's school lunch program when she stays with Father, a large portion of the child's wardrobe, and $305 per month for the child's medical insurance. Father argues that, while Mother also incurs monthly nurturing and child-raising expenses, Father carries a higher proportional share of the child's monthly costs. Father concludes the court should have awarded him the federal child dependency tax exemption every year. We cannot agree.

Rule 1910.16-2(f) of the Pennsylvania Rules of Civil Procedure provides:

> **Rule 1910.16-2. Support Guidelines. Calculation of Net Income**
>
> **(f) Dependency Tax Exemption.** In order to maximize the total income available to the parties and children, the court may, as justice and fairness require, award the

federal child dependency tax exemption to the non-custodial parent, or to either parent in cases of equally shared custody, and order the other party to execute the waiver required by the Internal Revenue Code, 26 U.S.C.A. § 152(e). The tax consequences resulting from an award of the child dependency exemption must be considered in calculating each party's income available for support.

Pa.R.C.P. 1910.16-2(f). "[T]he purpose of child support is to promote the child's best interests and the trial court is in the best position to determine those interests." *May v. May*, 837 A.2d 566, 570 (Pa.Super. 2003) (citations omitted). "[T]he 'primary purpose' of allocating the dependency tax exemption [is] to maximize income available for child support…." *Id.* Nevertheless, "our choice of language indicates that there [are] other purposes[, such as]….to provide an incentive for timely payment of child support which…promotes the best interests of the children who are the subjects of the support order." *Id.*

Instantly, the trial court explained its decision as follows:

The parties follow a shared equal physical custody schedule. The record indicates that both parents provide for the child's expenses in an approximately equal manner. Father pays for the child's medical insurance. Father testified that he pays $300 or $305 dollars per month for the child's medical insurance. Father testified that he pays all of the child's dental and medical bills, and the majority of her school lunches. Mother testified that she pays for all of the child's clothing, sports and activity equipment, undergarments and personal hygiene products. Mother testified that she pays $132 per month for the child's dance activity, as well as clothing and equipment for the dance activity. Mother testified that she pays for the child's winter clothing and hats. Mother testified that she pays for the child's gifts for birthday parties she attends, even if the child is attending the birthday party while

Father has custody. Mother testified that she supplies all of the transportation, packs the child's clothing to send to Father's house and picks up the child's dirty clothes after the child has been at Father's. Mother testified that she pays for sneakers and paid for the child's laptop computer that she uses for school and at Mother's and Father's residence. Mother testified that she didn't know the circumstances regarding the child's school lunches when the child is with Father, but testified that the child packs her lunch when with Mother. Father testified that he washes the child's bed clothes and anything she needs to have washed. Father testified that he would be happy to take care of the child's laundry. Father testified that he buys shoes for the child, and pointed to one specific example of a recent shoe purchase. Father testified that he buys the child coats, clothes and personal hygiene products.

The record indicates that both parties provide for their child. While it is true that Father pays for the child's health insurance, it is this [c]ourt's determination that Mother pays for more of the child's basic needs and activities, including activities that occur on Father's custody time. Given the testimony and the record in this case, this [c]ourt determined that the parties' child care expenses are approximately equal.

(Trial Court Opinion at 21-22). We accept the court's decision and see no reason to disturb it on the grounds alleged. Based on the foregoing, we affirm the order in part regarding the dependency exemption, but vacate that part of the order awarding child support of $635.00 plus $100.00 in arrears per month, and remand for further proceedings.

Order affirmed in part and vacated in part; case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/5/2014</u>