731 A.2d 1252

**Mary Jo LABAR, Appellant,**

v.

**Thomas S. LABAR, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 10, 1996.

Decided June 8, 1999.

56

April L. Cordts, Bethlehem, for Mary Jo Labar.

Peter C. Layman, Bangor, for Thomas S. Labar.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal by allowance from an order of the Superior Court, vacating the Northampton County Common Pleas Court's order of support entered against Appellee, Thomas S. Labar. At issue is the calculation of Appellee's income for purposes of determining his support obligation. For the following reasons, we affirm.

Mary Jo Labar (Wife) and Thomas S. Labar (Husband) were married on April 21, 1979, and separated on July 31, 1992. Two children were born of the marriage, who were ten and seven years old on the date of separation. On November 4, 1992, Wife filed a petition for support on behalf of herself and the children.

■ A domestic relations hearing conference was held on November 30, 1992. At the conference, Husband, who holds a fifty percent equity interest in a bowling alley, Blue Valley Lanes, Inc., a Subchapter S Corporation, presented his 1991 federal income tax return in support of his claim that his 1991 disposable income [1] was $32,068, calculated as follows:

| | |
|---|---|
| Interest income | $ 2,527.00 |
| Salary from Blue Valley | 26,000.00 |
| ½  of Blue Valley's taxable income [2] | 3,541.00 |

1.  A parent's ability to pay for support of his or her minor children is to be determined as of the time at which support payments are sought. *Costello v. LeNoir*, 462 Pa. 36, 337 A.2d 866 (1975).

2.  Because Blue Valley is organized as a Subchapter S Corporation, all gains and losses, for federal income tax purposes, pass through Blue Valley to the individual shareholders; thus, any federal tax liability on capital gains is the responsibility of each shareholder to be computed at that shareholder's marginal tax rate. *See In re Estate of Dobson*, 490 Pa. 476, 417 A.2d 138 (1980). Although a Subchapter S Corporation does not actually pay federal income taxes, it still must file a Subchapter S Corporation federal income tax return (Form 1120S) reflecting any capital gain, or loss and a Schedule K–1 for each shareholder reflecting the amount of gain or loss passed on to each shareholder. If a capital gain is claimed, the amount passed on to the shareholders must then be included as additional income to the shareholders for federal income tax purposes.

|                  |             |
|------------------|-------------|
| Disposable income | $32,068.00 |

Wife countered that Husband's one-half share of Blue Valley's taxable income did not accurately reflect the value of Husband's interest in Blue Valley. Wife therefore sought to add to Husband's disposable income: (1) one-half of the depreciation deduction taken by Blue Valley on its 1991 federal income tax return; (2) Blue Valley's 1991 entertainment expense; and (3) Blue Valley's 1991 amortization expense.

The hearing officer agreed with Wife and recalculated Husband's disposable income as follows:

| | |
|---|---|
| Interest income | $ 2,527.00 |
| Salary from Blue Valley | 26,000.00 |
| ½ of Blue Valley's taxable income | 3,541.00 |
| ½ of Blue Valley's depreciation | 34,066.00 |
| Blue Valley's entertainment expense | 1,914.50 |
| Blue Valley's amortization expense | 560.00 |
| Disposable income | $68,608.50 |

After crediting Husband for two loans related to the marital residence and his support obligation for a third child, the hearing officer recommended a support order in the amount of $474 per week. By order dated January 11, 1993, the trial court adopted the recommendation.

Husband filed timely objections and on April 1, 1993, the trial court held a *de novo* hearing focusing on the issue of whether the depreciation deduction was properly included in Husband's disposable income calculation.[3] The trial court determined that the depreciation deduction was properly included in the calculation and by order dated May 28, 1993, Husband's objections were dismissed. Husband's subsequent Motion for Reconsideration was denied.

On appeal, the Superior Court vacated and remanded for a recalculation of support. *Labar v. Labar*, 434 Pa.Super. 612,

Blue Valley's 1991 tax return (Form 1120S) reflects income of $7,081; the Schedule K–1 for Husband reflects a fifty percent share of this income, $3,541. This $3,541 is reflected as income on Husband's 1991 individual federal income tax return (Form 1040), despite the fact that Husband never received a $3,541 disbursement from Blue Valley.

**3.** Husband did not challenge the propriety of the inclusion of the entertainment and amortization expenses in the income calculation.

644 A.2d 777 (1994). Husband contended before both the trial court and the Superior Court that it was error to include in his 1991 income calculation one-half of Blue Valley's 1991 depreciation deduction. Husband is correct in this contention, but not for the reasons he puts forth, or for the reasons advanced by the Superior Court in its opinion.

The sole issue in this case concerns the proper calculation of Husband's disposable income for use in determining his support obligation. In *Commonwealth ex rel. Gitman v. Gitman*, 428 Pa. 387, 237 A.2d 181 (1967), this Court held that in determining a husband-father's financial obligation to his wife and children, a court must make a thorough appraisal of the husband-father's actual earnings and perquisites, and the true nature and extent of his property and financial resources.

At the April 1, 1993 *de novo* hearing before the trial court, Husband, relying on *Cunningham v. Cunningham*, 378 Pa.Super. 280, 548 A.2d 611, *alloc. denied*, 522 Pa. 576, 559 A.2d 37 (1989), asserted that the hearing officer improperly included one-half of the depreciation deduction taken by Blue Valley on its Subchapter S Corporation tax return in his disposable income calculation.

Although instructive, *Cunningham* is not on point with this case. In *Cunningham*, Mr. Cunningham's most recent individual federal income tax return showed a gross income of $24,000, with over $17,000 in depreciation and depletion expenses claimed, for a net taxable income of approximately $7,000. Mr. Cunningham asserted that this net taxable income of $7,000, as reflected on his individual federal income tax return, was the proper measure of his disposable income for purposes of calculating his support obligation. The Superior Court disagreed, stating:

> It is well established that depreciation and depletion expenses, permitted under federal income tax law without proof of actual loss, will not automatically be deducted from gross income for purposes of determining awards of alimony and equitable distribution. In determining the financial

responsibilities of the parties to a dissolving marriage, the court looks to the actual disposable income of the parties:

> [T]hat income must reflect actual available financial resources and not the oft-time fictional financial picture which develops as a result of depreciation deductions taken against ... income as permitted by the federal income tax laws. Otherwise put, *"cash flow" ought to be considered and not federally taxed income.*

*Commonwealth ex rel. Hagerty v. Eyster,* 286 Pa.Super. 562, 568–69, 429 A.2d 665, 668–69 (1981) (citations omitted). *Accord, Flory v. Flory,* 364 Pa.Super. 67, 527 A.2d 155 (1987); *Parkinson v. Parkinson,* 354 Pa.Super. 419, 512 A.2d 20 (1986).

> *Depreciation and depletion expenses should be deducted from gross income only when they reflect an actual reduction in the personal income of the party claiming the deductions ....*

378 Pa.Super. at 282, 548 A.2d at 612–613 (emphasis added). The Superior Court determined that the depreciation and depletion deductions claimed by Mr. Cunningham did not represent actual reductions in his personal income; they were therefore not to be considered in the calculation of Mr. Cunningham's income for support purposes.

■ Thus, *Cunningham* stands for the proposition that deductions allowed under the federal tax laws, that do not represent actual reductions in a support obligor's personal income, will not be allowed in the disposable income calculation. Such reasoning is sound.

■ However, in this case, Husband received $26,000 from Blue Valley in 1991; he has not sought to reduce this actual net income received by claiming a depreciation deduction on his federal tax return. Instead, it is Wife who seeks to include in Husband's disposable income calculation one-half of the depreciation deduction Blue Valley took in determining the amount of taxable income passed on to its shareholders for federal income tax purposes. Wife seeks to do so because it is her basic contention that Husband should have received more

remuneration from Blue Valley in 1991 than he actually did, implying that Husband was using Blue Valley to shelter income from the support obligation calculation.

While it is possible that a person could use a corporation to shelter income from the support obligation calculation by improperly retaining cash flows within the corporation rather than disbursing them to the shareholders, the mere fact that Blue Valley took a depreciation deduction against gross income in calculating net taxable income passed on to shareholders does not establish the presence of sheltered cash flows. This is because depreciation does not generate cash flow.

Depreciation and cash flow are not equivalents. Depreciation is an accounting mechanism which allocates the original cost of an asset to the periods in which the asset is used. Depreciation does not result in income. Rather, when depreciation expense is claimed, *taxable* income is decreased by the amount so claimed, resulting in a "marginal income tax savings," not an increase in income.[4]

The presence of a depreciation deduction (on a federal income tax return) or a depreciation expense (on consolidated financial statements) simply signals that a corporation has made capital expenditures, the costs of which it seeks to allocate to the periods in which the assets underlying the capital expenditures are being used. Only by asserting that the capital expenditures, for which depreciation deductions are currently being claimed, were made with cash flows that should have instead been disbursed to the shareholders, can it

---

**4.** In contravention of these basic accounting principles, Husband erroneously testified before the trial court as follows:

[We would] try to *generate cash flow using the depreciation* and whatever other moneys we could generate by building the business back up.... So when we bought it we were looking at a long-range plan to put the bowling center back where it should be, by updating it year to year, taking the money and not putting the money in our pockets but putting it back in so that the community would have a good bowling center over the years.

(N.T., 4/1/93 at 12–13) (emphasis added).

Since depreciation does not generate cash flow, Husband cannot be correct.

be argued that a corporation is improperly sheltering cash flows.

The absurdity of the proposition that the depreciation deduction taken by Blue Valley in 1991 generated a cash flow that should be considered income to Husband in 1991 is further demonstrated by an examination of the business transactions underlying Blue Valley's 1991 depreciation deduction. In 1990,[5] Blue Valley borrowed $840,000 from United Penn Bank, approximately $430,000 of which was used to pay off the existing property mortgage and a loan incurred in acquiring a liquor license. The remaining money, approximately $410,000, was used to make capital expenditures for a computerized scoring system and pinsetters. In 1991, Blue Valley's capital expenditures consisted of $26,299 for a new lane machine. (N.T. 4/1/93 at 19).[6]

By asserting that the depreciation deduction taken by Blue Valley in 1991 should be considered additional income to Husband, Wife is necessarily arguing that all of the funds used for capital expenditures should not have been used for capital expenditures, but should have instead been disbursed to the shareholders as income.

This argument fails because it assumes without evidence of record that the funds used for the capital expenditures consisted of cash flows which Blue Valley could have elected to disburse to its shareholders. If the source of the funds used to make the capital expenditures had been, for example, retained corporate earnings, Wife could argue that the funds expended on capital expenditures (and not just the amount depreciated in any given tax year) were unnecessary disbursements made to shelter cash flows from the support obligation, and Husband would carry the burden of showing that the capital expenditures were necessary for the continued operation and smooth running of the business. *See McAuliffe v.*

---

5. The evidence of record does not reveal the nature of any of the business transactions underlying Blue Valley's pre–1990 capital expenditures.

6. Curiously, Blue Valley's Statement of Cash Flows only reflects $25,-129 in property and equipment purchases in 1991. (R.R. at 90a).

*McAuliffe,* 418 Pa.Super. 39, 613 A.2d 20 (1992). However, Blue Valley has been and continues to be a highly leveraged corporation. Consider the 1990 capital expenditures which were debt financed. That portion of the $840,000 loan which was spent on capital expenditures was loaned to Blue Valley by United Penn Bank for the exclusive purpose of making those same capital expenditures, which presumably serve as security for the loan. It would be untenable to argue that proceeds of a loan made to a corporation for the exclusive purpose of making capital expenditures should instead be disbursed as income to the two principal shareholders of the corporation. Yet that is precisely the implication of Wife's argument. As for the $26,299 in 1991 capital expenditures, Husband erroneously testified that "the depreciation, again, is used to pay for these capital improvements . . . ." (N.T. 4/1/93 at 19). Since depreciation does not generate cash flow, Husband cannot be correct. The source of these funds is therefore left to conjecture.[7]

■ This is not to say that Husband is correct in asserting that his disposable income is the sum of his actual net earnings and his one-half share of Blue Valley's taxable income. Utilizing one-half of the amount of Blue Valley's federally taxable income as the measure of Husband's interest in Blue Valley is an example of the "oft-time fictional financial picture" which develops as a result of the federal income tax laws. " 'Cash flow' ought to be considered and not federally taxed income." *Commonwealth ex rel. Hagerty v. Eyster,* 286 Pa.Super. 562, 569, 429 A.2d 665, 669 (1981).

■ In situations where the support obligee contends that the support obligor's interest in a closely held corporation is not accurately represented by the support obligor's share of

7. A review of Blue Valley's Statement of Cash Flows (R.R. at 90a), would seem to suggest that the funds used to make the 1991 capital expenditures originated from $66,303 in "Net Cash Provided By Operations." If that is in fact the case, that the source of the funds used to make the 1991 capital expenditures was cash from operations, the burden would then shift to Husband to show that the cash expenditures were necessary for the continued operation and smooth running of the business. *McAuliffe.*

the corporation's taxable income, the court must make an appraisal of the true nature and extent of the support obligor's interest in the corporation. *See Gitman.* That appraisal can take the form of a valuation of the support obligor's equity in the corporation,[8] or it can take the form of an allegation that the corporation has sheltered cash flows by not making disbursements to its shareholders. When it is alleged that the corporation has sheltered cash flows, the sources of those cash flows must be identified; i.e., it must be shown that the cash flows *could have been* disbursed to shareholders. In cases where cash flows which could have been disbursed to shareholders have instead been disbursed for business expenses, the corporation must show that the expenditures were necessary for the continued operation and smooth running of the business in order to refute an allegation that the corporation has sheltered cash flows. *McAuliffe.*

This analysis differs from that employed by the Superior Court. Recognizing that a parent may not "voluntarily decrease" the ability to provide support by sheltering income through "unreasonable or unnecessarily large expenditures for his or her own benefit," *Melzer v. Witsberger,* 505 Pa. 462, 472, 480 A.2d 991, 996 (1984), the Superior Court opined that the issue of the propriety of including the depreciation deduction in Husband's disposable income calculation involved two related, but independent inquiries:

First, a choice of accounting methods may be utilized to raise or lower the depreciation expense taken so as to raise or lower net income. When gross income is reduced, this produces a marginal income tax savings, which then becomes income that is available to the business or that can be distributed to the proprietor as he or she chooses. Thus, in inquiring into whether the depreciation and depletion ex-

8. A review of Blue Valley's 1991 Balance Sheet (R.R. at 87a), reveals why that would not be an attractive choice for Wife in this case. Blue Valley is a highly leveraged corporation. Even the most simplistic financial evaluation reveals that Blue Valley's assets, valued at $732,-822, are offset by liabilities of $938,041. If Blue Valley were to liquidate its assets as of December 31, 1991, it would be unable to satisfy its debt obligations. Thus, the value of shareholder equity in Blue Valley is not a positive amount.

penses reflected an *actual* reduction in Husband's personal income, . . . we must look at whether any such marginal income created through tax savings was reinvested in the business or distributed to the Husband directly.

Second, even if the accounting method is unaltered, the proprietor may simply make substantial capital outlays, which will proportionately increase the depreciation expense, even though the capital outlays are necessary to maintain the business. Thus, we must also inquire as to whether the capital outlays underlying the reduction were necessary, . . . or whether they represented an attempt to shelter income for purposes of avoiding spousal and child support obligations. . . . Each must be examined *separately* and the trial court must be clear as to which factor it is scrutinizing.

434 Pa.Super. at 618–619, 644 A.2d at 780–781 (emphasis in original) (citations and footnotes omitted).

■ With regard to the first inquiry, the Superior Court found that the marginal income made available through the depreciation expenses was not distributed to the husband directly, but expended in the satisfaction of principal business loans and the purchase of new equipment. While the Superior Court accurately described the relationship between depreciation expense and net income, and the potential for marginal income tax savings arising therefrom, under the circumstances of this case there existed no marginal income tax savings available to Blue Valley. Blue Valley, by virtue of its Subchapter S Corporation status, does not actually pay federal income taxes (see *supra,* note 2) and therefore does not enjoy a marginal income tax savings as a result of the depreciation deduction. Instead, it is the shareholders of Blue Valley (i.e., Husband and his partner) who experience the income tax savings as a result of the depreciation deduction. Thus, as a result of the depreciation deduction taken by Blue Valley, Husband's net income after taxes is greater than it would be without the deduction, thereby *increasing* the amount of Husband's disposable income available for support.

██ With regard to the second inquiry, the Superior Court determined that because specific evidence of Husband's intent to shelter income was absent from the record, it was presumed from the facts that the expenditures were legitimate and necessary. While the Superior Court is correct that inquiry must be made into the necessity of the capital expenditures underlying the depreciation deduction, the court's analysis is incomplete. As explained above, before inquiry as to the necessity of capital expenditures is made, it must first be established that the sources of the funds used to make the capital expenditures were cash flows which *could have* instead been disbursed to shareholders.

Returning to the facts of the instant case, the presence of a depreciation deduction on Blue Valley's 1991 federal income tax return does not signal that Blue Valley has sheltered income. It simply indicates that Blue Valley has made capital expenditures it seeks to allocate to tax year 1991. Since the evidence of record does not reveal the nature of any of the business transactions underlying Blue Valley's pre–1990 capital expenditures, the source of the funds used to make these capital expenditures has not been identified. The source of the funds used to make the 1990 capital expenditures, as already discussed, consisted of debt financing, not cash that *could have been* disbursed to the shareholders. As far as the 1991 capital expenditures are concerned, Husband testified that amount consisted of $26,299.[9] As noted previously though, the source of the funds used to make the 1991 capital expenditures is not on the record. It cannot automatically be assumed from the evidence of record that the source of the funds used to make the expenditures was sheltered cash flows.[10] If the source of the funds used to make these capital

9. The existence of 1991 capital expenditures is also revealed by an examination of Blue Valley's Statement of Cash Flows (R.R. at 90a). It is interesting to note that Blue Valley's Statement of Cash Flows reveals that at the end of 1991, Blue Valley had $28,387 in excess cash. It would thus seem that other sources of cash flows that could have been disbursed to shareholders do exist. It is unclear from the record however, whether that is in fact the case.

10. Even if the evidence of record did in fact show that the source of the funds used to make the expenditures was sheltered cash flows, the

expenditures is identified as cash flows which could have instead been distributed to the shareholders, then and only then does the question arise whether the expenditures were unnecessary and therefore properly included in the calculation of Husband's disposable income.

Accordingly, the order of the Superior Court is affirmed and the case is remanded to the trial court for a recalculation of support consistent with this opinion.

Justice NEWMAN files a Dissenting Opinion in which Chief Justice FLAHERTY joins.

NEWMAN, Justice, dissenting.

I believe that the trial court correctly determined Husband's disposable income when it included in its income analysis the depreciation deduction taken by Husband's Subchapter–S Corporation. Therefore, I must respectfully dissent.

Depreciation is the reduction in value of a firm's assets, through wear and tear, obsolescence, or other factors, and roughly measures consumption of capital. *Trinova Corporation v. Michigan Department of Treasury*, 498 U.S. 358, 364, n. 1, 111 S.Ct. 818, 112 L.Ed.2d 884 (1991). Section 167 of the Internal Revenue Code[1] allows as a deduction from taxable income a reasonable allowance for the exhaustion and wear and tear of property used in a trade or business. *See Newark Morning Ledger, Co. v. United States*, 507 U.S. 546, 553, 113 S.Ct. 1670, 123 L.Ed.2d 288 (1993). While this depreciation deduction has been a part of the federal tax system since 1909, this Court has not previously considered whether the amount of the depreciation deduction taken can be included in a party's "income" when determining his or her support obligations.

simple addition of Blue Valley's 1991 depreciation deduction would still result in an undervaluation of Husband's disposable income. The addition of the 1991 depreciation deduction to the disposable income calculation would only ensure that a mere portion of the total unnecessary capital expenditures made by Blue Valley was included in Husband's disposable income calculation, even though inclusion of the full amount of the unnecessary capital expenditures would be proper.

1. 26 U.S.C. § 167.

The Superior Court spoke on the issue in *Cunningham v. Cunningham*, 378 Pa.Super. 280, 548 A.2d 611 (1988), *appeal denied*, 522 Pa. 576, 559 A.2d 37 (1989), in which they reiterated that when determining gross income for purposes of alimony and equitable distribution awards, depreciation and depletion expenses allowed pursuant to the Internal Revenue Code *should not automatically be deducted from gross income.* Instead, a court should look to a party's "actual disposable income" and deduct depreciation expenses from income "only where they reflect an actual reduction in the personal income of the party claiming the deductions, such as where, e.g., he or she actually expends funds to replace worn equipment or purchase new reserves." *Id.* at 282, 548 A.2d at 613. In *McAuliffe v. McAuliffe*, 418 Pa.Super. 39, 44, 613 A.2d 20, 22 (1992), the Superior Court elaborated on this statement, noting that the " 'new reserves' contemplated [in *Cunningham* ] should not be read to mean an allocation for future expenditures or the expansion of a party's business. To the contrary, the cash outlays for 'new reserves' must be necessary for the continued operation and smooth running of the business."

In view of the fact that this Court has not spoken on the issue before today, I conducted a review of how other jurisdictions have responded to the issue. Courts in other jurisdictions have generally taken one of the following three approaches in deciding whether to include depreciation in a support obligor's income:

that (1) depreciation is a book figure which does not involve any cash outlay nor reduce actual dollar income and, therefore, should not be allowed as a deduction; that (2) depreciation diminishes income-producing capacity and leads to the eventual replacement of the asset involved thereby warranting its deduction, and (3) depreciation should not categorically either be deducted as an expense or treated as income, but rather that the extent of its inclusion, if any, should depend on the particular circumstances of each case.

*Stoner v. Stoner,* 163 Conn. 345, 351, 307 A.2d 146, 151 (1972).

Examples of the application of the various approaches include the Supreme Court of Alaska's determination that de-

preciation "is a means of reflecting on an annual basis the costs of capital equipment. Such costs are real and should not be disregarded unless it appears that equipment was acquired in order to avoid or reduce the obligor's child support obligation." *Eagley v. Eagley,* 849 P.2d 777, 781 (Alaska 1993). Montana's Supreme Court decided that "[n]on-cash deductions such as depreciation are not generally subtracted from gross receipts in determining gross income. Although § 46.30.1508(1)(c), ARM [Administrative Rules of Montana] allows depreciation for vehicles, machinery and other tangible assets to be deducted upon a showing of economic necessity, the rule does not require a district court to do so." *In re Pedersen,* 261 Mont. 284, 287, 862 P.2d 411, 413 (1993). North Dakota has a section in its administrative code that "specifically provides that business expenses are to be included as part of an obligor's net income from self-employment for purposes of calculating child support." *Houmann v. Houmann,* 499 N.W.2d 593, 594 (N.D.1993). South Dakota Codified Law 25–7–6.6 states that, in computing income available for child support, a court "may allow or disallow deductions for federal income taxation purposes which do not require the expenditure of cash, including, but not limited to, depreciation or depletion allowances." See *Grode v. Grode,* 543 N.W.2d 795, 804 (S.D.1996).

In 1972 the Supreme Court of Connecticut cogently addressed the depreciation issue in *Stoner v. Stoner, supra.* After noting that, "depreciation is a mere book figure which does not either reduce the actual dollar income of the defendant or involve an actual cash expenditure when taken," but rather "represents additional cash available to the defendant by permitting substantial tax deductions," the Court also recognized that a support obligor should not be compelled to exhaust all of his or her capital without an opportunity to preserve his or her business. The Court determined that depreciation should neither always be treated as an expense nor always characterized as a net profit. *Id.* at 353, 307 A.2d at 152. Instead, the Court announced a more flexible test and held that, "the amount of depreciation, if any, to be considered

in determining the availability of net income for the purposes of alimony and support awards is best left to the court's discretion 'determined from *all of the circumstances* including the amount of depreciation claimed and the property depreciated.'"[2] *Id.,* 307 A.2d at 152[3] (emphasis added) (citation omitted).

I agree with this approach and believe this Court should have adopted it. Allowing a trial court to consider *all* of the financial circumstances of the parties (including the possible inclusion in income of depreciation deductions legitimately claimed on federal income tax returns) allows a court the flexibility required to make a fair and just support award based on the specifics of the case before it.

In the case before us, the trial court justified its decision to include the depreciation deduction in Husband's income by noting that, while Husband described the improvements made to the business, he "made no mention of the amount of increased income generated by the improvements" and "did not testify as to whether the improvements were necessary to maintain the current level of income to the business." Trial Court Opinion, August 20, 1993 at 4. The court noted its concern that Husband was "building up equity in his business and creating a 'good bowling center for the community' at the expense of his children's support." *Id.* at 5. The trial court stated that it could not, and would not, permit this to occur. I believe the court was correct in this determination.

The Superior Court, in reversing, held that a two-part analysis was required to determine if depreciation expenses could be deducted from gross income when calculating a

**2.** This language was drawn from the opinion of the Superior Court in *Commonwealth v. Miller,* 202 Pa.Super. 573, 198 A.2d 373 (1964). Our Superior Court has made other pronouncements on the issue since 1964, including its opinions in *McAuliffe v. McAuliffe,* supra, and *Cunningham v. Cunningham,* supra, which the Superior Court relied on in making its decision in the instant matter.

**3.** Nineteen years later the Supreme Court of Iowa found the reasoning of the Connecticut Supreme Court persuasive and adopted its approach. The Court found that approach was consistent with the flexibility its guidelines provided to deviate from them "when equity and justice demand it." *Gaer v. Gaer,* 476 N.W.2d 324, 328 (1991).

support obligation. The first part of the analysis was whether the expenses reflected an actual reduction in Husband's personal income, and the second was whether the capital outlays were reasonable or merely an attempt to shelter income from support obligations. The Court concluded that the claimed expenditures did reduce Husband's income, and presumed the expenditures were legitimate and necessary. Accordingly, the Court remanded for a recalculation of Husband's disposable income.

The Superior Court gave great deference to the fact that the Internal Revenue Code provides for depreciation expenses:

> In general, there should be little concern over the amount of depreciation as it is limited to very specific regulations set forth by the Internal Revenue Code, which cannot be manipulated without risking income tax fraud. With this in mind, a finding of unreasonable depreciation expense by the court should be limited to those cases where there is evidence of blatant unreasonableness or vast changes in expenditures from one year to another.

*Labar v. Labar*, 434 Pa.Super. 612, 620–621, 644 A.2d 777, 781 (1994). While the Superior Court properly noted that depreciation expenses are legitimate deductions under the federal tax laws, I believe that it erred in concluding that they should be included in disposable income for support purposes only when unreasonable. In my opinion the appropriate inquiry to decide whether to include depreciation in support income is a review of all of the relevant circumstances of the particular situation presented. This is an inquiry of the trial court to be conducted in each case. In fact, in its Opinion, the trial court specifically noted that its "decision was based on the facts and circumstances in the case". Trial Court Opinion, August 20, 1993, p. 6. Accordingly, I see no need to remand this matter for a recalculation of Husband's support obligation.

For the above stated reasons, I would reverse the Order of the Superior Court.

Chief Justice FLAHERTY joins this dissenting opinion.