J-S66027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| EARNEST C. JENKINS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ERIN C. CUNNINGHAM | |
| Appellant | No. 669 WDA 2015 |

Appeal from the Order entered March 30, 2015
In the Court of Common Pleas of Fayette County
Civil Division at No: 00446 of 2014 DR

BEFORE:  OLSON, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JANUARY 20, 2016**

Erin C. Cunningham (Mother) appeals from the March 30, 2015 order entered in the Court of Common Pleas of Fayette County, confirming the court's August 19, 2014 interim order that required Mother to make $711 monthly support payments to Earnest C. Jenkins (Father).  Mother argues that the trial court abused its discretion and/or committed error of law in calculating Father's income.  Following review, we affirm.

On March 25, 2015, the trial court conducted a *de novo* hearing in response to Mother's challenge to the August 19, 2014 interim order.  In its Pa.R.A.P. Rule 1925(a) opinion, the trial court summarized the testimony

_____

[*] Retired Senior Judge assigned to the Superior Court.

presented by Mother's financial expert at the March 25 proceedings as

follows:

> On March 25, 2015, Mother presented the testimony of Samuel G. White[,] a Certified Public Accountant who[m] the court recognized as an expert in the field of accounting and tax examination. Mr. White testified that the income of [Father] was determined to be $22,000 for the year 2013 on his federal tax return, but that his actual income was $77,730.00 for that year. Father is the sole owner and operator of Jenkins Timber [&] Wood, an S Corporation.[1] Mr. White arrived at his conclusion by starting with Father's adjusted gross income from his tax return and determined that certain "add-backs" were required, specifically depreciation and section 179 expenses that are considered non-cash items.[2] Mr. White testified that he calculated $25,000.00 in section 179 deductions and $6,300.00 in depreciation to arrive at the true cash flow or income of the entity.
>
> Mr. White opined that certain expenses . . . were items that he believed would be disallowed by the IRS and should be used to increase Father's income. Mr. White also believed that rent paid to ENS[, a sole proprietorship,] for $7,500.00 should be credited as income to Father because Father is the owner of that entity.

---

[1] The witness explained that "[a]n S Corporation is a flow-through entity and the profit and loss of that entity are reported on the shareholder's tax return." Notes of Testimony, 3/25/15, at 42.

[2] The witness testified that "[d]epreciation is where you write-off equipment over time, and it's a non-cash outlay. Section 179 is where you write-off a specific amount of equipment that's purchased that year." Notes of Testimony, 3/25/15, at 44.

Section 179 of the IRS Code (Election to expense certain depreciable business assets) is codified at 26 U.S.C.A. § 179 and provides, in part, that "[a] taxpayer may elect to treat the cost of any section 179 property as an expense which is not chargeable to capital account. Any cost so treated shall be allowed as a deduction for the taxable year in which the section 179 property is placed in service." 26 U.S.C.A. § 179.

With regards to the Section 179 deductions, Mr. White testified that Father purchased a truck for $73,000, but he could not recall if the $25,000.00 deduction was related to that.

When questioned by the Court how he arrived at his figure, Mr. White opined that he started with the base income of $25,000, added $25,000.00 as Section 179 deductions, added $6,300.00 as depreciation, added $13,000.00 for real estate taxes, $3,400 for professional fees, $360.00 for rentals, and $2,700.00 for auto expenses.

Trial Court Opinion (T.C.O.), 7/9/15, at 1-2 (references to Notes of Testimony omitted).

In its March 30, 2015 order, the trial court rejected Mother's suggested income calculations for Father, as supported by Mr. White's testimony, and upheld the August 19, 2014 interim order of the Domestic Relations Section. The trial court concluded "that the depreciation, Section 179 deductions, and real estate taxes were necessary business-related expenses and were not taken to avoid distribution from Jenkins Timber [&] Wood, Inc. to Father." T.C.O., 7/9/15, at 4-5.

Mother filed a timely appeal from the March 30 order and complied with the trial court's April 27, 2015 order to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In her Rule 1925(b) statement, Mother raised the same two issues she asks this Court to consider on appeal:

1. Did the [t]rial [c]ourt abuse its discretion and/or err as a matter of law in failing to add back depreciation and Section 179 deductions to determine the true operation income or

cash flow of Jenkins Timber & Wood, Inc. in calculating the income of [Father]?

2. Did the [t]rial [c]ourt abuse its discretion and/or err as a matter of law in failing to add back real estate tax deductions inappropriately taken by Jenkins Wood & Timber, Inc. in calculating the income of [Father]?

Mother's Brief at 4.

In **J.P.D. v. W.E.D.**, 114 A.3d 887 (Pa. Super. 2015), this Court recently reiterated:

Our standard of review in child support matters is well settled:

Appellate review of support matters is governed by an abuse of discretion standard. When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. An abuse of discretion is [n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses.

*Id.* at 889 (quoting **R.K.J. v. S.P.K.**, 77 A.3d 33, 37 (Pa. Super. 2013) (citations and quotation marks omitted)).

In her first issue, Mother contends the trial court abused its discretion by failing to consider depreciation and Section 179 deductions as part of the operating income of Father's business. Mother relies largely on **Cunningham v. Cunningham**, 548 A.2d 611 (Pa. Super. 1988), in support

- 4 -

of her position.[3]  We find **Cunningham** factually distinguishable.  In that case, the husband argued trial court abuse of discretion for refusing to deduct depreciation and depletion expenses from his gross income in arriving at an estimate of his disposable income.  This Court explained:

> It is well established that depreciation and depletion expenses, permitted under federal income tax law without proof of actual loss, will not automatically be deducted from gross income for purposes of determining awards of alimony and equitable distribution. . . .  Depreciation and depletion expenses should be deducted from gross income only where they reflect an actual reduction in the personal income of the party claiming the deductions, such as where, *e.g.*, he or she actually expends funds to replace worn equipment or purchase new reserves.  This is not the case here.  Mr. Cunningham does not claim on appeal, nor did he claim below, that he in fact spent any of his $24,000 income to replace worn equipment or purchase new coal reserves. . . . To the contrary, the couple's daughter, an accountant who prepared a financial analysis of the Cunninghams' coal company based on Mr. Cunningham's 1984 income tax return, testified that the depreciation and depletion claimed by her father did *not* represent any actual expenditures on his part.

*Id.* at 612-13 (footnote omitted) (emphasis in original).

It is clear that the depreciation and depletion expenses in **Cunningham** were not connected to business expenditures by any evidence of record.  By contrast, Father's business spent $73,000 on a truck for the business.  Notes of Testimony, 3/25/15, at 55.  The tax return for the

---

[3] On page 12 of her brief, Mother cites **Cunningham** in support of assertions relating to the burden of proof to show "proof of actual loss" and the shifting of that burden.  However, our review of **Cunningham** does not reveal any such discussion.

business reflected a $25,000 Section 179 depreciation for the purchase of the truck, even though Mother's expert acknowledged Father could have written off more than $25,000. ***Id.*** at 48. Father explained that he left the decision to his accountant whether to write off the vehicle all at once or to depreciate it over time. ***Id.*** at 55. In any event, unlike in ***Cunningham***, it is clear in this case that funds were expended to purchase a new asset for the business.

The trial court acknowledged that a person could conceivably "use a corporation to shelter income from support obligation calculation[s] by improperly retaining cash flows within the corporation rather than disbursing them to the shareholders[.]" T.C.O., 7/9/15, at 3. However, "the mere fact that the corporation took a depreciation deduction against gross income in calculating net taxable income passed on to shareholders does not establish the presence of sheltered cash flows." ***Id.*** (citing ***Labar v. Labar***, 731 A.2d 1252, 1255 (Pa. 1999)). "This is because depreciation does not generate cash flow." ***Id.*** Quoting ***Labar***, the trial court noted:

> Deprecation and cash flow are not equivalents. Depreciation is an accounting mechanism which allocates the original cost of an asset to the periods in which the asset is used. Depreciation does not result in income. Rather, when depreciation expense is claimed, taxable income is decreased by the amount so claimed, resulting in a "marginal income tax savings," not an increase in income.
>
> The presence of a depreciation deduction (on a federal tax return) or a depreciation expense (on consolidated financial statements) simply signals that a corporation has made capital expenditures, the costs of which it seeks to allocate to the

periods in which the assets underlying the capital expenditures are being used. Only by asserting that the capital expenditures, for which depreciation deductions are currently being claimed, were made with cash flows that should have instead been disbursed to the shareholders, can it be argued that a corporation is improperly sheltering cash flows.

*Id.* (quoting **Labar**, 731 A.2d at 1255-56) (footnote omitted).

The trial court concluded that Mother "presented no evidence that the deductions [and] depreciation . . . were not proper and necessary expenditures in the operation of Father's business. Further, no evidence was presented that Jenkins Timber & Wood, Inc. was used to shelter cash flows to Father." T.C.O., 7/9/15, at 4. We find no abuse of discretion on the part of the trial court in reaching its conclusions. Mother's first issue does not provide any basis for relief.

In her second issue, Mother argues the trial court abused its discretion by failing to add back into Father's income the real estate tax deductions taken by his business. Mother argues that Father's business "paid $13,159 in real estate taxes that Father had a legal obligation to pay. [The business's] payment of the taxes is therefore income attributable to Father." Mother's Brief at 21 (references to Notes of Testimony and citation omitted).

Mother's expert witness testified that the entity entitled to take real estate tax deductions is the legal owner of the property. Notes of Testimony, 3/25/15, at 46. Mother's counsel then asked, "And if [Father] has previously testified today that Jenkins Timber & Lumber does not own any parcels, would that withstand [sic] to reason that Jenkins Timber &

- 7 -

Lumber should not be taking any deductions for property taxes?" *Id.*
Mother's expert responded, "Based on any other knowledge, I agree." *Id.*

While it is true that Father's business did not own the real estate, the actual ownership was not established at the hearing. What was established is that Father owns the business, Notes of Testimony, 3/25/15, at 28; Father is the sole proprietor of ENS, which received rent from Father's business, *id.* at 60; and Father did not know why property taxes were deducted on behalf of the business because he left that up to his accountant, *id.* at 63. While it was not established whether the real estate was titled in the name of Father individually or his sole proprietorship, what was not even suggested was that the property was owned by some unrelated individual or entity other than Father individually or his sole proprietorship such that Father improperly claimed a real estate tax deduction for property in which he did not have an ownership interest.

Father suggests that even if Mother is correct in asserting that the tax deduction constituted income to Father, the issue would be moot because:

> The $13,159 income that would be attributed to [Father] on his individual income taxes would be a legitimate deduction for the business . . . thus lowering the business's net income by the same amount of $13,159 and [] although [Father's] gross income would be increased by $13,159, the net income would then be reduced by $13,159 as a deduction for paid real estate taxes paid for the property he owns.

Father's Brief at 8. We agree. Further:

> Pennsylvania courts cannot attribute as income funds not actually available to or received by the party. Our [S]uperior

[C]ourt has additionally agreed that Pennsylvania case law does not accept the cash flow argument in calculating income available for support. In the instant case, the amount of real estate taxes paid, whether by the business or by [Father] individually does not represent funds that are "available" to [Father]. [Mother] does not argue that these funds were used for anything other than for real estate taxes on property owned by [Father]. These funds were not used for luxury items, investments, or voluntary purchases. These funds were used for real estate taxes levied by the government and [were] certainly a non-optional expense.

*Id.* at 9 (citations, quotations and brackets omitted).

The trial court determined Mother failed to present evidence that the "real estate taxes were not proper and necessary expenditures in the operation of Father's business . . . and were [] taken to avoid distributions from [Father's] business to Father." T.C.O., 7/9/15, at 4-5. As with Mother's first issue, we find no abuse of discretion in the trial court's conclusions.

As noted above, this Court's standard of review of a support order is abuse of discretion and we may reverse the trial court's determination only if the trial court's order cannot be sustained on any valid ground. *J.P.D.*, 114 A.3d at 889. We conclude that the trial court did not abuse its discretion. Because Mother has not established any grounds for disturbing the order, we affirm the trial court's March 30, 2015 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/20/2016