J-A18028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARY K. KARAS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS C. JENNINGS | : | No. 1292 WDA 2020 |

Appeal from the Order Dated October 26, 2020
In the Court of Common Pleas of Washington County Domestic Relations
at No(s):  No. 00280 DR 2009,
PACSES No. 023002925

BEFORE: OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                **FILED: SEPTEMBER 3, 2021**

Appellant Mary K. Karas (Mother) appeals from the trial court's order regarding the support obligation of Appellee Thomas C. Jennings (Father). This case returns to us after a prior panel of this Court remanded the matter in 2013 for further proceedings. ***See M.K.K. v. T.C.J.***, 129 WDA 2012, 2013 WL 11256814 (Pa. Super. filed July 25, 2013) (unpublished mem.).  Appellant claims that the trial court failed to comply with this Court's remand and challenges the trial court's calculation of Father's business income.  We affirm.

This Court previously set forth the facts and procedural history:

The following facts are uncontested.  Mother and [Father] were married on September 8, 1992, divorced on September 11, 1996, and had one child, a son who was born on December 13, 1991. Mother had primary custody of the parties' minor child until June 1997.  From June 1997, until November 2006, Father had primary custody and Mother had partial custody.  Father filed the child support action against Mother at 1349 DR 1997, and Mother paid child support pursuant to an order entered in that litigation until

she assumed full custody of their child in November 2006. In 2007, Mother filed a petition at 1349 DR 1997 asking the court to both terminate the support order entered against her and to enter a child support order in her favor. After that petition was presented at 1349 DR 1997, Father's support obligation was suspended, but, despite numerous requests, court personnel refused to schedule a hearing on Mother's pending demand that a child support order be entered against Father. Therefore, on March 31, 2009, Mother initiated the present support action at docket number 280 DR 2011 in the Court of Common Pleas of Washington County. Attached to the support complaint initiating the present lawsuit was a copy of the 2007 petition that was filed at 1349 DR 1997.

The present litigation proceeded to a May 7, 2009 conference. Mother was awarded monthly support of $567 effective March 31, 2009, based upon a determination that her monthly net income was $1,477.85 and Father's net monthly income was $2,416.33. Both parties demanded a *de novo* hearing before a hearing officer, and, after discovery requests and a joint continuance, the matter eventually proceeded to a hearing on July 16, 2010. In the interim, the child had graduated from high school on June 6, 2010.

For thirty-two years, Father was self-employed and earned his income by selling vacuum cleaners that retailed for approximately $2,400, selling various products necessary to operate the vacuum cleaners, and repairing that equipment. He did business under the name Air Sense as a sole proprietor. In 2006, the year of the custodial transfer, Father created Environmental [Impact LLC (Environmental)], a partnership between Father and his current wife. Since the transfer, one-half of the profits from the vacuum cleaner business were imputed to his wife. Father failed to produce any tax returns for Environmental. His tax accountant appeared at the hearing but refused to produce those materials because Father's wife had not granted him permission to do so.

Father acknowledged at the hearing that he only made deposits to his business accounts for amounts received from the sale of vacuum cleaners and related products and from payment for repairs. Father's 2006 individual income tax return set forth that his gross receipts from Air Sense was $115,023. Mother had subpoenaed Air Sense's bank records. Those records established that, in 2006, Father deposited $192,574.36 to Air Sense's PNC Bank account and $269,727.35 to Air Sense's Community Bank

- 2 -

account. Father did not explain the discrepancy between the gross receipts reported on his 2006 individual tax return and the amount deposited into his bank accounts. He indicated that there were interbank transfers involved, but Father did not verify this representation by documentary proof nor did Father offer an explanation as to why apparently unnecessary transfers between two business accounts were made.

Father's individual tax return for 2007 also was inconsistent with bank records produced by Mother. Specifically, on his 2007 individual tax return, Father claimed that his gross receipts from Air Sense were $118,606. Mother demonstrated that in 2007, Father deposited $481,156.13 to Air Sense's PNC Bank account and deposited $553,743.83 to Air Sense's Community Bank account.

At the hearing, Father did not produce any personal income tax returns for periods after 2007. He testified that, in 2008, his gross receipts from his vacuum cleaner business were $32,266, and, after deduction for cost of goods and business expenses, that enterprise had a net profit in 2008 of $5,410. Mother countered that, in 2008, Father deposited $52,160.49 to Air Sense's PNC Bank account and $519,484.49 to Air Sense's Community Bank account. Mother also proved that, in the first ten months of 2009, Father deposited $598,870.57 into Air Sense's Community Bank account.

The hearing officer acknowledged that Mother established the existence of a vast discrepancy between Air Sense's actual gross receipts and the gross receipts reported for that business on Schedule C to Father's 2006 and 2007 income tax returns. The hearing officer also admitted that Father proffered no compelling explanation for these differences, and, based upon the foregoing, the officer specifically determined that Father's actual income was not reflected on his 2006 and 2007 income tax returns, which significantly understated his revenue in order to avoid his support obligation. Despite these findings, the hearing officer elected to assign Father an earning capacity of $48,000 based upon his age and experience and assessed a monthly support obligation of $665.70 against him. The officer refused to retroactively impose that obligation to the filing date of Mother's 2007 petition for modification at 1349 DR 1997.

*M.K.K.*, 2013 WL 11256814 at *1-2.

- 3 -

The **M.K.K.** Court held that the trial court failed to accurately calculate Father's actual income because, among other reasons, Father did not produce documents substantiating his business income. **Id.** at *3-4. The **M.K.K.** Court reversed and ordered Father to "produce records to substantiate both the receipts of his vacuum cleaner business and the legitimate business expenses associated with that operation." **Id.** (ordering Father to "provide valid evidence of his real business revenue and expenses or suffer the sanction of having his income for child support purposes based upon the gross receipts as established by the deposits to the business accounts"). The **M.K.K.** Court also ordered the trial court to assess Father's income by calculating his business income minus verified cash outlays for business expenses. **Id.** at *1.

We state the post-remand facts and procedural history as set forth by the trial court:

> Neither party petitioned the court for a hearing based on the remand for nearly five years.
>
> On or around December 22nd, 2017, [Mother] filed a new complaint for support and a hearing was held with the Hearing Officer on February 7th, 2018. At the time of the hearing, [Father] was given additional time to provide all relevant documentation still in his possession. On or around March 2nd, 2018, the documentation was originally given to the hearing officer for review.[1] After retrieving the documentation and making copies

---

[1] Father produced a few thousand pages of documents substantiating his business expenses. **See** N.T. Hr'g, 10/30/18, at 11, 37. The documents filled an entire box of double-sided copies, which was delivered to Mother's counsel, *(Footnote Continued Next Page)*

for the opposing party, [Father] returned the documentation to the hearing officer for review. From there, an additional hearing was scheduled for May 16th, 2018, upon recommendation of the hearing officer[] to ensure all necessary information could be put on the record. After numerous requests for continuances, a hearing was held [on October 30, 2018].

Trial Ct. Op., 2/1/21, at 2-3.

At the October 30, 2018 hearing, Father testified that he provided the documents ordered by this Court. N.T. Hr'g, 10/30/18, at 37. With respect to explaining the difference between (1) the gross business income based on Father's bank statements, and (2) the gross business income reported in Father's tax returns, Father testified that he was "kiting" checks between bank accounts almost every day. *See, e.g.*, *id.* at 18 (testifying, "I would over-deposit one check to another bank and then take that money and pay the bill and I'd take the third check and make up the difference of that. Then when the checks cleared the following day, I'd start that all over again"). Mother cross-examined Father and did not present any witnesses. At the conclusion of the hearing, the hearing officer admitted Father's twenty-four exhibits into evidence, which also included his tax returns and numerous spreadsheets. *Id.* at 72 (reflecting the hearing officer's statement that "[o]n behalf of [Father], we're admitting the following exhibits"). The hearing officer also apparently

---

and two boxes of single-sided copies, which were delivered to the hearing officer. *Id.* at 11, 13, 28-31, 33.

admitted the few-thousand pages of documents into evidence.[2]  *Id.* at 38-39 (discussing how to mark several thousand pages), 79-80 (explaining that due to the size of the record, the hearing officer's findings would be delayed).

On February 22, 2019, the hearing officer filed her findings, which in relevant part found that Father's check kiting artificially inflated his gross business income.[3]  *See* Findings of Hr'g Officer, 2/22/19, at 3 (unpaginated) (stating that Father "was not earning the income that it would appear he was earning from all of the deposits into the [bank] accounts").

---

[2] Because none of the exhibits were transmitted to this Court as part of the certified record, this Court could not verify that the admitted exhibits actually included several thousand pages.

[3] *See generally United States v. LeDonne*, 21 F.3d 1418, 1425 n.2 (7th Cir. 1994) (stating that "[c]heck kiting involves the knowing drafting and depositing of a series of overdraft checks between two or more . . . banks with the purpose of **artificially inflating bank balances** so that checks can be drawn on accounts that actually have negative funds.  If timed correctly, the bank will be prevented from discovering that the accounts are overdrawn and will be tricked into honoring checks drawn on accounts with insufficient funds." (citations omitted and emphasis added)); *accord Williams v. United States*, 458 U.S. 279, 280 n.1 (1982) (explaining that a "check kiter opens an account at Bank A with a nominal deposit.  He then writes a check on that account for a large sum, such as $50,000.  The check kiter then opens an account at Bank B and deposits the $50,000 check from Bank A in that account.  At the time of deposit, the check is not supported by sufficient funds in the account at Bank A.  However, Bank B, unaware of this fact, gives the check kiter immediate credit on his account at Bank B.  During the several-day period that the check on Bank A is being processed for collection from that bank, the check kiter writes a $50,000 check on his account at Bank B and deposits it into his account at Bank A.  At the time of the deposit of that check, Bank A gives the check kiter immediate credit on his account there, and on the basis of that grant of credit pays the original $50,000 check when it is presented for collection." (citation omitted)).

The trial court summarized the subsequent procedural history as follows:

[E]xceptions were filed by both Mother and Father to the hearing officer's February 22, 2019 findings,] and a temporary order, dated March 5th, 2019, was entered by this court. The temporary order required [Father] to pay $550.00 per month for arrears with an effective date of September 26th, 2007. Additionally, the arrears were set at $19,056.89 as of February 22th, 2019 and were due in full immediately. An argument on the filed exceptions was scheduled for May 20th, 2019. On September 23rd, 2019, this court filed an order denying [Mother's] exceptions, denying two of [Father's] exceptions and granting one of [Father's] exceptions.

Subsequent to the September 23rd order, both parties filed an appeal to the Pennsylvania Superior Court. On October 25th, 2019, this court requested a remand of the cross filed appeals on this matter in order for the hearing officer to re-review the file and conduct a recalculation based upon a perceived error in the calculation. On or around December 3rd, 2019, the Superior Court entered an order vacating this court's September 23rd[] order and remanded this matter to this court.

As a result, this court entered an order on December 11th, 2019, scheduling re-argument of the exceptions with the possibility to remand to the hearing officer for recalculation of support.

On January 6th, 2020, it was ordered that this matter be remanded to the hearing officer for further clarification and fact-finding as it relat[ed] to the Superior Court decision filed on July 25th, 2013. On September 1st, 2020, a temporary order was filed ordering that the effective date of the order would be September 26, 2007. Additionally, with that effective date, the domestic relations officer performed an audit on all of the documentation provided and determined that [Father] owed a total arrearage balance of $0.02.

[Mother] filed exceptions on October 13th, 2020[4] and argument was held on October 19th, 2020. After consideration of the exceptions filed, the arguments made, a review of the hearing officer's report, and a review of the relevant portions of the record, this court determined that the hearing officer did not abuse her discretion and made no error of law when making her recommendation. Therefore, on October 26th, 2020, this court adopted the hearing officer's recommended order to have the effective date be September 26th, 2007 and [Father's] total arrearage balance be $0.02.

Trial Ct. Op. at 3-4 (formatting altered).

Mother filed a timely notice of appeal and a timely court-ordered Pa.R.A.P. 1925(b) statement.[5] The trial court filed a responsive Rule 1925(a) opinion.

Mother raises the following issues:

1. Whether the trial court abused its discretion in an error or misapplication of the law, failure to follow proper legal procedure, or in a manifestly unreasonable determination in failing to comply with this Court's prior decision reversing and remanding for proceedings consistent with its adjudication?

2. Whether the trial court abused its discretion in an error or misapplication of the law, failure to follow proper legal procedure, or in a manifestly unreasonable determination based upon the record devoid of any document offered or admitted into evidence on behalf of [Father]?

Mother's Brief at 4-5.

_____

[4] Mother did not raise an exception that (1) the hearing officer abused her discretion by granting Father an extension of time to produce documents, and (2) the support order was based on unadmitted evidence.

[5] No post-trial motion is required. **_See_** Pa.R.C.P. 1910.12(h); **_see also_** Pa.R.C.P. 1930.2.

In support of her first issue, Mother argues that the hearing officer abused its discretion by granting Father an extension of time to produce documents substantiating his business income. *Id.* at 22-23. Mother also contends that the hearing officer did not calculate Father's income by subtracting verified cash business expenses. *Id.* at 26. Mother claims that the hearing officer also erred by **not** giving Father a credit for his gasoline expenditures because it would result in Father having "zero income." *Id.* at 27. In Mother's view, the elimination of those expenses "makes it unmistakably clear that Father's income and expense figures are entirely unreliable, without basis in fact." *Id.* at 28.

Father counters that the trial court complied fully with this Court's remand instructions. Father's Brief at 6. Father claims that he provided the requested documentation in May 2018, well in advance of the October 30, 2018 hearing. *Id.* Father further notes that at the hearing, he testified that he was check kiting, which explains the discrepancies between the income reported in his tax returns and the money "deposited" in his bank accounts. *Id.* at 7.

The trial court asserts that it complied with this Court's remand order. Trial Ct. Op. at 6. The trial court points out that it even remanded to the hearing officer to recalculate Father's support obligation in order to comply with our remand. *Id.* at 7. The trial court states that there is no evidence

that Father failed to cooperate with the calculation of his business income.

*Id.*

The standard of review follows:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Summers v. Summers*, 35 A.3d 786, 788 (Pa. Super. 2012) (citation omitted). With respect to remand, "[i]t is well-settled that a trial court must strictly comply with the mandate of the appellate court." *Agostinelli v. Edwards*, 98 A.3d 695, 706 (Pa. Super. 2014) (citation omitted).

It is also well settled that "any matter not raised in an exception [in a support matter] is deemed waived." *Miller v. Bistransky*, 679 A.2d 1300, 1302 (Pa. Super. 1996) (citation omitted and formatting altered). Similarly, any issues not included in a timely filed court-ordered Rule 1925(b) statement are waived on appeal. *M.G. v. L.D.*, 155 A.3d 1083, 1092 (Pa. Super. 2017).

When reviewing a support order, this Court has explained:

Each parent has an absolute obligation to support a child, and that obligation must be discharged by the parents even if it causes them some hardship. The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses.

- 10 -

> The starting point for calculation of a parent's child support obligation is a determination of each party's income available for support. The assessment of the full measure of a parent's income for the purposes of child support requires courts to determine ability to pay from all financial resources. Thus, when determining income available for child support, the court must consider all forms of income.

*Mencer v. Ruch*, 928 A.2d 294, 297 (Pa. Super. 2007) (citations omitted and formatting altered). A "court must make a thorough appraisal of the [support obligor's] actual earnings and perquisites, and the true nature and extent of [the obligor's] property and financial resources." *Labar v. Labar*, 731 A.2d 1252, 1254 (Pa. 1999). Further, a court disallows lawful federal tax deductions that do "not represent actual reductions in" the obligor's personal income. *Id.*; *accord M.K.K.*, 2013 WL 11256814 at *3-4 (citations omitted and formatting altered).

Firstly, Mother's exceptions and her Rule 1925(b) statement did not raise the issue of the hearing officer's abuse of discretion by granting Father an extension of time to file documents. Therefore, Mother waived the issue. *See M.G.*, 155 A.3d at 1092; *Miller*, 679 A.2d at 1302.

With respect to Mother's challenge to the hearing officer's refusal to deduct Husband's gasoline expenses, that decision actually benefits Mother because it did not decrease Father's business income. *See Labar*, 731 A.2d at 1254; *Mencer*, 928 A.2d at 297. Therefore, Mother did not establish an abuse of discretion. *See Summers*, 35 A.3d at 788.

With respect to Mother's argument that the hearing officer miscalculated Father's income, Mother failed to identify exactly how the officer erred. The hearing officer reviewed and admitted into evidence Father's tax returns, numerous spreadsheets, and supporting documents. *See* N.T. Hr'g, 10/30/18, at 72, 79-80. Father also admitted on the stand that he was check kiting, which falsely inflated his business income.[6] *See, e.g.*, *id.* at 18. We add that the domestic relations officer audited all of the documents. *See* Trial Ct. Op. at 3-4. Despite this extensive record and Father's testimony, Mother does not elaborate on her allegation that "Father's income and expense figures [were] entirely unreliable [and] without basis in fact."[7] *See* Mother's Brief at 28. Without additional specificity by Mother on precisely what was unreliable and unsupported, we agree with the trial court that it did not abuse its discretion. *See Summers*, 35 A.3d at 788.

For her second issue, Mother contends that Father did not enter into evidence any of the twenty-four exhibits that he used at the hearing. Mother's Brief at 29. Specifically, Mother argues that none of Father's exhibits were "offered into evidence by counsel or admitted into evidence by the court" or otherwise made part of the record. *Id.* at 30. As a result, Mother contends

_____

[6] This Court does not condone check kiting and Father's use of this practice is reprehensible.

[7] It is not this Court's role to provide legal counsel to Mother by reviewing the extensive record to identify any alleged miscalculations.

that the order at issue was unsupported by competent evidence. *Id.* at 29. Father counters that all of the documents were admitted. Father's Brief at 10, 12. The trial court's Rule 1925(a) opinion did not address this issue.

It is well settled that any issues not raised in an exception or a Rule 1925(b) statement are waived on appeal. *M.G.*, 155 A.3d at 1092; *Miller*, 679 A.2d at 1302. Instantly, our review of the record confirms that Mother did not raise this issue as an exception or in her Rule 1925(b) statement and therefore, it is waived. *See M.G.*, 155 A.3d at 1092; *Miller*, 679 A.2d at 1302. Regardless, as set forth above, the hearing officer admitted Father's exhibits into the record. *See* N.T. Hr'g, 10/30/18, at 72. For this reason, Mother is due no relief. Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/3/2021